ALFRED KESSLER et al., Respondents, *v.* JOHN D. HERKLOTZ et al., Appellants.

ACTION FOR THE RECOVERY OF MONEY PAID BY MISTAKE.   In an action to recover money alleged to have been paid by mistake, it appeared that the plaintiffs and defendants were both brokers doing business in the city of New York; that a foreign agent of defendants transmitted orders from foreign customers and guaranteed collection of their accounts, which were charged and credited to such agent personally; that one of such customers owed the defendants a balance; that in response to a request by such agent to settle, the customer cabled the plaintiffs to pay "to defendants $35,000 for account of G." (the agent) which they did, receiving a receipt to the effect that it was paid on account of G.; on the same day the plaintiffs instructed the customer to pay their foreign correspondents a sum much more than $35,000; thereafter the customer failed and the next day the plaintiffs cabled G. that they had paid such sum for his account, to which he replied that the payment was not on his account, but was on account of the customer; thereupon they demanded the return of the money paid to the defendants upon the ground that G. had not authorized the payment.   *Held*, that the plaintiffs in paying the defendants relied solely upon the responsibility of the customer, and neither in fact nor in their belief extended any credit to G.; there was, therefore, no mistake as to any material fact, and a recovery could not be sustained.

*Kessler* v. *Herklotz*, 115 App. Div. 522, reversed.

(Argued October 25, 1907; decided November 19, 1907.)

APPEAL from a judgment entered December 5, 1906, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which overruled defendants' exceptions ordered to be heard in the first instance by the Appellate Division, denied a motion for a new trial and directed judgment for plaintiffs on the verdict directed by the trial court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George A. Strong* for appellants.   The direction of the verdict cannot stand upon the construction given by the Appellate Division to the cablegram from Lurman to the plaintiffs. (*Poucher* v. *Scott*, 98 N. Y. 422; *R. Bank* v. *Patton*, 109

Ill. 479 ; *Garr* v. *Martin*, 20 N. Y. 306.) A creditor may demand and receive the debt due to him. If it be paid to him through a banker he is not affected by anything occurring between his debtor and the banker. Even a fraud by the debtor upon the banker would not make the creditor liable to return the money. (*Justh* v. *Bank of Comm.*, 56 N. Y. 478 ; *Stevens* v. *Board of Education*, 79 N. Y. 183 ; *Goshen Bank* v. *State of N. Y.*, 141 N. Y. 379 ; *Hatch* v. *Nat. Bank*, 147 N. Y. 184 ; *Nassau Bank* v. *Bank of New-burgh*, 159 N. Y. 456 ; *Henry* v. *Wilkes*, 37 N. Y. 562 ; *Fitzhugh* v. *Sackett*, 50 N. Y. 699 ; *Sherwood* v. *Stone*, 14 N. Y. 267 ; *Cartwright* v. *Greene*, 47 Barb. 9 ; *Newcomb* v. *Hale*, 90 N. Y. 326.)

*Howard Taylor* for respondents. An action for money had and received was the correct form of action, and warranted recovery upon the facts in the case. (*Roberts* v. *Ely*, 113 N. Y. 128 ; *Hathaway* v. *County of Delaware*, 185 N. Y. 368 ; *Fairchild* v. *McMahon*, 139 N. Y. 290 ; *Krumm* v. *Beach*, 96 N. Y. 398 ; *C. Nat. Bank* v. *Heilbronner*, 108 N. Y. 439 ; *Gindre* v. *Kean*, 7 Misc. Rep. 582 ; *J. C. Home* v. *M., K. & T. R. R. Co.*, 182 N. Y. 47.)

CULLEN, Ch. J. This action is brought to recover money claimed to have been paid by mistake under the following circumstances: The plaintiffs were bankers and commission merchants and the defendants were brokers, both doing business in the city of New York. Garbrecht & Company was a business firm in Bremen, Germany, and Luerman & Son a firm of bankers in the same city. Garbrecht & Company were the agents of the defendants, who secured for them orders in Germany for the purchase and sale of coffee, cotton and cereals. These orders were to be executed in New York and were of a speculative character. Garbrecht guaranteed the defendants for all claims against customers introduced by him arising out of the business transacted between the parties. The collection of margins was made through Garbrecht and he was paid by sharing in the defendants' commissions. All

the transactions had with Garbrecht's customers were charged or credited on defendants' books to Garbrecht personally. Garbrecht made up statements in the name of defendants' firm and delivered them to the German customers. Prior to February 4th, 1904, Luerman & Son had been operating through the defendants, with the result that they had become indebted to the defendants in something over $27,000. On that day Garbrecht & Company sent a written statement of the account to Luerman & Son and asked that a cable remittance be made to the defendants that morning for the sum of $25,000. No response seems to have been made to this demand. On the following day Garbrecht made another statement which showed that the debit balance due from Luerman had been increased to $37,598.75, and asked them to make a cable remittance to the defendants of $35,000. Thereupon and on the same day Luerman & Son cabled to the plaintiffs a message which, as alleged in the complaint, " requested plaintiffs to pay to defendants $35,000 for account of Garbrecht." Upon the receipt of this cablegram the plaintiffs paid the defendants $35,000, stating that it was made on account of Garbrecht, and the defendants gave them a receipt to that effect. On February 9th Luerman & Son failed, and on the 10th the plaintiffs cabled Garbrecht: " Paid Herklotz, Corn & Company $35,000 fifth February for your account, as per instructions from Luerman's. Please confirm by cable, our expense." To that Garbrecht replied by cable " not our but Luerman's account." Upon the receipt of the answer from Garbrecht the plaintiffs demanded of the defendants a return of the money so paid to them, on the ground that Garbrecht had not authorized the payment, with which demand the defendants refused to comply. Thereupon the plaintiffs brought this action.

The telegram from Luerman to the plaintiffs does not appear in the evidence, the court having excluded it on the objection of the defendants upon the theory that the plaintiffs were bound by the allegations as to its effect contained in the complaint. It did appear, however, from the testimony of

one of the plaintiffs, that the cablegram also contained this direction : " Draw on us three days or ten days." The plaintiffs did not draw any draft on Luerman, but on February 5th instructed him to pay their correspondent, a Bremen bank, the sum of three hundred seventeen thousand forty 95/reichsmark three days after the receipt of the letter, and on the same day advised said bank of their instructions to Luerman. This sum is far more than the equivalent of $35,000, and must have included other claims against Luerman. At the close of the plaintiffs' case the defendants moved for a nonsuit, which being denied, and the defendants offering no evidence, the court instructed the jury to find a verdict for the plaintiffs and ordered defendants' exceptions thereto to be heard in the first instance in the Appellate Division. The Appellate Division by a divided court overruled the exceptions and directed judgment to be entered on the verdict.

It would be much more satisfactory if we had before us the exact language of the cablegram from Luerman to the plaintiffs, and we think the learned trial court erred in its exclusion. Even if the effect of such admission were to vary the allegations of the complaint as to its import, the court might readily have allowed an amendment of the pleading in this respect. We must, however, deal with the record as it is before us. At the threshold of the case is presented the question whether it was under any material mistake of fact that the plaintiffs were induced to make the payment, for the mistake must be of a material fact to entitle the plaintiffs to relief. (*Southwick* v. *First National Bank of Memphis*, 84 N.Y. 420 ; *Dambmann* v. *Schulting*, 75 N. Y. 55.) If there was no such mistake then the action must fail regardless of the question whether the payment was made in such a manner as to preclude the plaintiffs from recovery, even if paid under mistake. The defendants were Luerman's creditors. Their agent, Garbrecht, directed Luerman to make payment by a cable transfer or order of money directly to the defendants in New York. In compliance with this demand the cablegram was sent and payment was made by the plaintiffs and the money received by the defendants on Luerman's debt.

So far as Luerman and the defendants are concerned, the money was paid by the one party and received by the other for the precise purpose that both parties intended. Therefore, the only question is whether there was any statement in the cablegram which misled the plaintiffs into making the payment. The theory of the plaintiffs in this respect is that by the cablegram they were led to believe that the payment was made on Garbrecht's account, while it was in reality on Luerman's account. This is the mistake of which they complain and which they assert entitles them to recover the money paid by them. But at this point the inquiry arises : What interest had the plaintiffs in the matter, whether the payment was made to Garbrecht's account· or Luerman's account ? This must depend on the terms of the cablegram as construed in the light of the course of business between the parties and the testimony given by the plaintiffs on the trial. It is stated in the complaint that the message "requested plaintiffs to pay to the defendants $35,000 for account of Garbrecht." Now, if the effect of the words "for account of. Garbrecht" was to pledge the credit and liability of Garbrecht to the plaintiffs for the amount they might pay the defendants, while Garbrecht had given Luerman no such authority, doubtless there was a material mistake of fact under which the payment by the plaintiffs was made. It seems, however, very clear, in the light of the plaintiffs' own evidence, that the cablegram was not subject to that construction, and that the plaintiffs themselves did not so interpret it. The learned counsel for the respondents admitted on the argument that had Garbrecht paid Luerman for the cable transfer the plaintiffs could have even no apparent claim against Garbrecht under the cablegram. It seems idle to argue that the plaintiffs acted on any responsibility of Garbrecht & Company, when, for aught they knew or could know, Luerman had already been paid, which would ordinarily be the case. The testimony of one of the plaintiffs makes the case still clearer. He details the ordinary course of business : "We supposed that he was acting as banker for Garbrecht. By acting

as banker for Garbrecht, I mean that if some one comes to me — say that our customer has asked me to make a payment to the other side (Europe) *for his account*, I will do so and I will recover the money from the man here. He will either give me — if he is not known, he has to pay the money before I send the cable; if he is a good man or anything of the sort then I say, ' All right, you need not pay until to-morrow.' I supposed that Garbrecht on the other side had gone to Luerman & Son and got them to send this message to us, to act as bankers for him in that way. *We assumed, if we thought about it, that he had made some satisfactory arrangement with Luerman & Son.*" This testimony shows what we would naturally assume, that to make a foreign payment on account of a person does not import nor suggest a loan or advance by the foreign banker to that person, but merely indicates the person to whom the payment is to be credited by the payee, and that in making the payment the banker making it gives exclusive credit to his correspondent who directs the payment. Garbrecht had made a satisfactory arrangement with Luerman & Son. He told them to cable the defendants $35,000 and they did so. The account on which the payment was to be made was properly designated as Garbrecht, for that was the name in which Luerman's account with others was kept on the defendants' books. There was no relation of principal and agent between the plaintiffs and Luerman. The relation between the plaintiffs and Luerman was simply that of debtor and creditor as the statement of the accounts between them might be at any particular time. This is not a case of an agent paying his own debts with his principal's money. I see no reason why, in the absence of any collusion with his debtor, the creditor of a banker in one country may not, in satisfaction of his debt, take a bill of exchange or a cable transfer of money payable in another country and hold the proceeds when collected with as good a title as if he had bought either for a payment made at the time. Of course, if the defendants or Garbrecht, knowing that Luerman was insolvent, had conspired with him

to obtain the money from the plaintiffs, who might advance it on Luerman's credit in ignorance of insolvency, Luerman intending not to repay the plaintiffs, that would be a fraud for which all would be liable. There is no evidence of fraud, however, in this case, except it may be surmised from the fact of Luerman's becoming bankrupt on the 9th of the month, that he was not in a flourishing financial condition on the 5th; but there is nothing to show that either the defendants or Garbrecht knew of his insolvency, much less that either of them entered with him into any scheme to defraud the plaintiffs.

As I read the opinions of the judges who wrote for the majority of the Appellate Division, I do not see that either of them has placed his decision on the express ground that the cablegram purported to pledge the responsibility of Garbrecht for the repayment of the moneys advanced by the plaintiffs. One of those learned judges says the plaintiffs " knew nothing of the dealings between the defendants and Garbrecht & Company, or between Garbrecht & Company and Luerman & Son. Presumably, Garbrecht & Company had arranged with Luerman & Son to have deposited with defendants a sum upon which they could draw, or with which they could deal in the ordinary course of international business. This is the fair meaning of the direction to pay or place ' for the account of Garbrecht & Company.' If, in fact, Garbrecht & Company had made no arrangements with Luerman & Son to place the money to their credit with defendants, and had not authorized it to be done, then the plaintiffs paid over the money under a mistake." Assuming for the argument only that the learned judge is correct in his statement of what presumption would arise from the cablegram, the plaintiffs had no possible interest in what Garbrecht & Company might do with the money. If the credit was given exclusively to Luerman, then all that the plaintiffs were required to do was to comply with Luerman's directions. It mattered nothing to them whether Garbrecht or any one else had ordered the payment of this money, so long as the credit or responsibility of

the person alleged to have ordered the payment was not pledged. It is said by another learned judge: "It is proven that Garbrecht disclaimed and disavowed the relation imputed to him to the transaction, and did not authorize the payment to be made on his account and would not adopt it. The plaintiffs were misled by Luerman's cable message and paid the money to the defendants through mistake." Here again we are brought to the question already discussed. If the cablegram purported to pledge Garbrecht's credit, undoubtedly he could repudiate the transaction as unauthorized by him. But if it did not purport to impose any liability on Garbrecht, there was nothing in the transaction for him to repudiate. The money paid was not his and the claim on which it was paid also was not his, but his principal's. Therefore, in whatever aspect we view the case its determination (at this stage) turns on the single proposition that the plaintiffs in paying the defendants relied solely on the responsibility of Luerman, and neither in fact nor in their belief extended any credit to Garbrecht. Hence, there was no mistake as to any material fact.

The judgment should be reversed and new trial granted, costs to abide the event.

GRAY, O'BRIEN, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.