In the Matter of the Estate of ADELAIDE L. BURROUGHS, Deceased.

Surrogate's Court, Kings County, September 6, 1930.

*Cullen & Dykman,* for the petitioner.

*Milo O. Bennett,* for Grace Paterson and Gerard Foster Burroughs, legatees.

*Gross & Keck*, for Marie Gewert and others.

*James P. Judge*, special guardian for Lorraine Laux and Eleanor Laux, infants.

WINGATE, S. The facts presented in this proceeding are interesting and unusual, although the importance of the legal problems involved is somewhat dimmed by the repeal of the Transfer Tax Law which gives rise to the questions raised.

Adelaide L. Burroughs died on March 8, 1928, her will being admitted to probate in this court on the following April eighteenth. By this will, after certain bequests of specific property, testatrix gave five general legacies aggregating $17,000, directed that " all transfer or inheritance taxes upon the gifts hereinbefore made be defrayed by my executor from my residuary estate," and bequeathed the residue in specified proportions to two step- and two granddaughters.

On August 28, 1928, the executor, Brooklyn Trust Company, paid to the New York State Tax Commission the sum of $1,500, which it estimated to be sufficient to cover the still unfixed New York State transfer tax.

On October 6, 1928, and order was made in usual course designating a transfer tax appraiser, who, under date of December 17, 1929, appraised the total net value of the property passing under the will at $82,159.17. Subsequently, on March 5, 1930, a *pro forma* order was entered fixing the taxable interests of, and the taxes payable by, the several legatees named in the will as follows:

|  | Beneficial interest | Tax payable |
|---|---|---|
| F. A. Hahn | $10,000 00 | $500 00 |
| Grace Paterson | 2,000 00 | 100 00 |
| Albert Hahn | 2,000 00 | 100 00 |
| G. F. Burroughs | 2,000 00 | 40 00 |
| Marie Gewert | 1,180 00 | 59 00 |
| Charlotte Kelly | 31,381 46 | 1,632 89 |
| Mary McGuire | 15,829 98 | 791 50 |
| Lorraine Laux | 8,323 74 | 83 24 |
| Eleanor Laux | 8,028 99 | 80 29 |

As will be seen, the total of the taxes thus fixed aggregated $3,386.92 which was $1,886.92 more than the amount of the deposit made by the executor with the Tax Commission.

The chief asset item going into the appraisal was 192 shares of the capital stock of Burroughs Building Material Company,

a domestic corporation, the value of which was fixed by the appraiser at $82,894.08. After repeated unsuccessful efforts to sell at private sale, this stock was sold by the executor in January, 1930, at public auction, pursuant to order of this court entered January 2, 1930, and on such sale realized only the sum of $22,368. The sale was fairly conducted and openly held, after due advertisement and general publicity, and there appears to be no basis for any claim of lack of due diligence on the part of the executor in respect thereto.

The Burroughs Building Material Company was a close corporation whose shares were not publicly quoted. There had been no sales of its stock to aid in a determination of its value, which was arrived at by the appraiser on the basis of its balance sheet with the addition of an estimated sum for good will. This particular block of stock was merely a small minority holding which fact, no doubt, largely contributed to the absence of general interest in its purchase.

The result of this great shrinkage in assets, amounting to $60,526.08, was to completely eliminate the beneficial interest of the residuary legatees and, after providing for the legitimate expenses of administration, even potentially to impair the value of the general legacies to the extent of between $600 and $700.

Three questions are involved in the present determination: *First*, as to whether the executor is entitled to a judicial settlement of its accounts in the absence of presentation of a final receipt from the State Tax Commission; in other words, whether the executor is personally liable, on the facts disclosed, to pay to the State Tax Commission such part of the $2,586.92 tax assessed against the residuary legatees as has not already been paid; *second*, whether the executor is entitled to recover from the State Tax Commission the sum of $701, by which the tax payment made on August 28, 1928, exceeded the tax payable on the beneficial interests passing to the specific and general legatees; and, *third*, whether the executor is under obligation to make up the deficiency in the general legacies resulting from its payment to the State Tax Commission of sums beyond the taxes assessed against the specific and general legatees.

A further conceivable question involved in the facts is as to whether the State Tax Commission may recover from the residuary legatees personally the amounts of the taxes assessed against them respectively, but as this question is not raised, it will not be passed upon.

The determination of the first question involves a consideration of the nature of the tax imposed by article 10 of the Tax Law

(Laws of 1909, chap. 62). In *Matter of Penfold* (216 N. Y. 163) the court says (at p. 167): "The transfer tax is not a tax upon property but upon the right of succession to property * * *. It is upon the right to receive an estate or a portion thereof. The tax (so called) is the toll or impost appropriated to itself by the State for or in connection with the right of succession to property."

In *Matter of Dows* (167 N. Y. 227, at p. 231) the court quotes with approval the language of the United States Supreme Court in *Magoun* v. *Illinois Trust & Savings Bank* (170 U. S. 283): "1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and, therefore, the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax the privilege, discriminate between relatives and between these and strangers and grant exemptions, and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

In *Matter of Gihon* (169 N. Y. 443) the court says (at p. 445): "The transfer tax imposed by the laws of this State is a tax, not on the property of the estate, but on the succession by the legatee, devisee, next of kin or heirs at law to the fortune of the deceased."

That the transfer tax is a purely personal matter with any given beneficiary is further demonstrated with especial clearness in *Matter of Wolfe* (89 App. Div. 349; affd., 179 N. Y. 599), where upon the renunciation of a legacy which thereupon fell into the residue, the ultimate taker was held taxable at his own rate under the statute and not at the rate of the legatee originally named.

"The New York State transfer tax is a tax upon the transfer or passing of property to the several legatees under the will * * * and is properly assessable against such legatees, respectively." (*Matter of Benson*, 120 Misc. 136, 137.)

Since, therefore, the tax assessed upon the right of inheritance of any particular beneficiary is a purely personal matter with such beneficiary, it is, of course, obvious that the executor would not be justified in using any funds in the estate beneficially belonging to another beneficiary whose tax had been paid for the purpose of paying the tax of the beneficiary which had not been paid.

As in the instant case the executor has no estate funds in its hands other than those beneficially belonging to the general legatees, whose taxes have already been paid, it is obvious that payment cannot be made unless the executor is under obligation to pay the taxes assessed against the residuary legatees from its own private funds, or unless the residuary legatees can be held personally liable, which question, as stated, is not now before the court.

The basis for the claim that the executor is bound to make such personal payment is found in the wording of section 224 of the Tax Law (as amd. by Laws of 1921, chap. 476), which reads in part as follows: " Every such tax shall be and remain a lien upon the property transferred until paid and the person to whom the property is so transferred, and *the executors*, administrators and trustees of every estate so transferred *shall be personally liable for such tax until its payment * * *.*" (Italics not in original. )

While this language by its terms would seem to impose a personal obligation of payment on the executor irrespective of the presence of applicable funds in his hands, it has been authoritatively and, as this court believes, justly construed to the contrary. In *Matter of Meyer* (209 N. Y. 386) the court says (at p. 390): " There is neither reason nor justice in a requirement that the executor here should pay with his individual moneys the transfer tax. We cannot impute to the legislature an intent so harsh and unjustifiable. The study of those provisions of the Tax Law relating to the transfer tax convinces us that the legislative intent was to secure the payment of the tax, which is in the nature of an excise on the right to and method of transfer, from the transferred estate, through the hands of the executor or administrator who is made, in a sense, the collector for the state. * * * An obvious contemplation and intention, expressed by the provisions, is that the money to be used by the executor * * * in the payment of the tax, and which through the payment is to produce and give him possession of the receipt, should be collected by him from the transferred property. When its collection has been impossible, the taking and production of the receipt is impossible, within the intent of the provisions, and the provision barring him from a final accounting is inapplicable. A case in which, after a hearing upon proper notice to all parties interested, it is adjudged that an executor * * * has been unable to get or collect the moneys for the payment of the tax from the transferred property through the destruction of the property or obliteration of its value during the process of administration, without fault or delinquency upon his part, is excepted from the general provision through implication."

It follows that the first question above propounded must be determined in the negative. The executor in the case at bar is under no obligation to pay any further sums to the State Tax Commission on the tax heretofore assessed either from its own personal resources or from the funds of the estate in its hands unless the latter should be found to exceed the sums necessary to pay all remaining administration expenses and all general legatees in full.

The second question relates to the possibility of recovery by the executor from the State Tax Commission of the sum paid by it in excess of the total tax due on the specific and general legacies. The sole effect of a temporary payment of taxes to be assessed or a prepayment on account of such taxes, is to prevent the accrual of interest on the tax by reason of failure to pay within eighteen months from the time of their accrual or to entitle the payor to the discount for payment within six months. (Tax Law, § 223, as amd. by Laws of 1929, chap. 227.) There is no provision of the Tax Law envisaging the very common practice of making a deposit with the Tax Commission on account of an unfixed tax. The entire language of the statute looks merely to a *payment* of such tax and the essential nature of the practice is that the sums prepaid are *payments* of an estimated sum on account of an unliquidated indebtedness. Where the tax, as finally determined, is less than this preliminary payment, the excess is, in practice, refunded as a result of the provisions of section 225 (as amd. by Laws of 1921, chap. 476), which provides for the " Refund of tax erroneously paid." In final analysis, the procedure of payment before the expiration of six months of a sum less than the total amount of the tax subsequently determined, differs in no essential particular from such partial payment within six months of a smaller sum than a tax then presently fixed. In both cases the result is only that the Tax Commission gives a credit of one dollar on account of the tax as and when determined for each ninety-five cents paid within six months of the date of death. In both cases the sum turned over is a voluntary payment on account of a general obligation and it is primary that no such payment may be reclaimed by the payor. (*Taylor* v. *Baldwin,* 10 Barb. 626; *Kessler* v. *Herklotz,* 190 N. Y. 24, 27; *Burne* v. *Van Raalte Co.,* 202 App. Div. 189; *Lowber* v. *Selden,* 11 How. Pr. 526.)

In the *Burne* case (at p. 194) the court lays down the rule that " Where a payment is voluntarily made with full knowledge of existing facts and without any protest whatever upon the part of the party paying, such payments cannot be recovered back."

The facts of the case at bar fall squarely within this rule. The payment by the executor to the Tax Commission was voluntarily made in August, 1928, before the institution of the transfer tax proceedings. There was no obligation on the executor to make it. The facts upon which it was based were fully known to the executor at the time, as is demonstrated by its affidavits and exhibits in the proceeding instituted shortly thereafter for the fixing of the tax and, finally, the taxing order, which still stands unmodified, definitely demonstrated that the only material fact, namely, the

value of the estate left by testatrix, was under and not over-estimated by the executor. The subsequent sale of the stock for less than the sum of either the executor's estimate or the appraiser's valuation has no bearing on the question, since the tax accrues at the time of decedent's death, and hence is unaffected by any subsequent increase or decrease in the value of the property. (*Matter of Hazard*, 228 N. Y. 26, 31; *Matter of Penfold*, 216 id. 163, 169.) It follows that no recovery may here be had by the executor against the State Tax Commission.

There remains the final question of the obligation of the executor to make up the deficiency in the general legacies resulting from the payment to the Tax Commission.

The only reason advanced by the executor against a surcharge sufficient to make up the sums legally payable to the general legatees is that the tax payment was made by it in good faith in order to save the five per cent discount. But in this connection the question of good faith is of no considerable materiality. Even if it were, the equitable principle would become applicable that where one of two innocent parties must suffer, he whose act occasioned the injury must bear the burden. In reality, however, the case is not one involving the application of the rules of equity, but presents a question of strict legal right. By the terms of the will, all taxes were payable from the residue of the estate. This point is of importance in two connections, *first*, as demonstrating the dominant purpose of the testatrix that the general legatees should in all events receive in full the respective sums bequeathed to them; and, *second*, as showing that the ordinarily laudable desire of the executor to save the five per cent discount on the tax was wholly for the benefit of the residuary legatees and could not under any circumstances result beneficially for the specific or general legatees. It was, in last analysis, the use in part of money upon which the general legatees had a prior lien in an effort to make a profit for the residuary legatees whose rights were subordinate. The executor in effect gambled money upon which the general legatees had a primary claim in an effort to increase the residue. In the overwhelming preponderance of cases all would have been well, but the extraordinary shrinkage in value of the stock made this the exceptional case, and the money required to satisfy the legal demands of the general legatees and to which they had a prior right was lost to the estate. Under such circumstances the executor has no more valid legal answer to make to the general legatees who are demanding that to which the law entitles them, than if it had used the funds of one estate in an effort to make another more prosperous.

The fact that part at least of the missing funds are due the general legatees for interest and not principal is entirely immaterial, since it is primary that a general legatee is entitled to interest on his legacy after the expiration of one year from the issuance of letters and has as sound rights in this direction as he has for the recovery of the principal.

It follows that the executor must return to this estate such part of the amount by which its payment to the State Tax Commission exceeded the taxes payable on the specific and general legacies, as may be necessary to enable it to pay the remaining administration expenses and the general legacies in full with interest.

Since the questions here raised involve a construction of the Tax Law in force prior to September 1, 1930, it will be appreciated that neither this determination nor the considerations upon which it is based have any bearing upon the proper construction of, or practice under, the Estate Tax Law going into effect on that date.

Submit decree, on notice, accordingly.