[Civil No. 3833.   Filed January 17, 1938.]

[75 Pac. (2d) 50.]

E. L. O'MALLEY, as Special Administrator of the Estate of JAMES P. O'MALLEY, Deceased, Appellant, v. MIT SIMS, Treasurer of the State of Arizona, Appellee.

Mr. William G. Christy, Mr. Hess Seaman and Mr. M. L. Ollerton, for Appellant.

Mr. Joe Conway, Attorney General, Mr. J. B. Sumter and Mr. Allan K. Perry, his Special Assistants, for Appellee.

LOCKWOOD, J.—James P. O'Malley, hereinafter called deceased, died at Billings, Montana, on January 2, 1928. At the time of his death he was a *bona fide* resident of Montana and was the owner of, and had in his possession in that state, 1,996 shares of the capital stock of the O'Malley Lumber Company, a corporation organized under the laws of Arizona, with its principal place of business in Phoenix, but owned no property of any nature, real or personal, within the state of Arizona. His will was duly probated in the district court in Montana, and his estate was there administered. On May 14, 1929, the attorneys for the executrix wrote to Charles R. Price, then state treasurer of Arizona, requesting that the inheritance or transfer tax on the estate of deceased due the state of Arizona be fixed, and inclosed an affidavit by the executrix showing the above facts, and stating that the stock referred to had been appraised at approximately $299,000. Thereafter, the state treasurer informed the executrix that the inheritance tax was fixed tentatively at the sum of $10,024.54. A check for that amount was immediately sent by the executrix to the state treasurer, and a receipt forwarded by the latter to her, with the information that this would authorize her to have the stock in question transferred on the books of the corporation. Nothing further was done in the matter until February 28, 1935, when E. L. O'Malley filed a petition in the superior court of Maricopa county that he be appointed a special administrator of the estate of the deceased. The reason stated in his petition for

the necessity of this appointment was that it was the contention of the legatees of the deceased that no inheritance tax was ever due to the state of Arizona from the estate of deceased, and that the appointment of a special administrator was asked for the purpose of securing an adjudication by the proper courts of Arizona as to whether any inheritance tax was due, and, if it were not, to recover the $10,024.54 paid in error as above. The court granted such petition, appointing E. L. O'Malley such special administrator of the said estate, as of February 28, 1935. Thereafter, the special administrator filed a further petition, asking determination and adjudication that no inheritance tax was due from said estate, which was duly served upon the state treasurer, who promptly appeared and demurred thereto. The matter was taken under advisement by the court, and under date of August 10, 1936, an order made denying the relief prayed for in such petition, whereupon this appeal was taken.

There are three questions of law for our consideration: (1) Was any inheritance or transfer tax due to the state of Arizona from the O'Malley estate under the circumstances above set forth; (2) if no tax was due, does the payment made by the executrix under the circumstances above set forth, being voluntary in its nature, bar the estate from a recovery of an amount erroneously paid; and (3) if the estate was never entitled to recover such payment, has the statute of limitations now run against the claim.

■ Beginning with the case of *Blackstone* v. *Miller*, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439, decided in 1903, the Supreme Court of the United States for years held that stock in a corporation, even though owned by a nonresident of the state of domicile of the corporation who held the certificates of stock at all times outside of such state, was subject to the inheritance or transfer tax imposed by that state. In the

later case of *Farmers' Loan & Trust Co.* v. *State of Minnesota,* 280 U. S. 204, 50 Sup. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000, decided January 6, 1930, the court definitely overruled the law laid down in *Blackstone* v. *Miller, supra,* and held that, under the circumstances above set forth, stock was subject to taxation on a testamentary transfer in the state of the domicile of the owner, but not in the state of the domicile of the corporation which issued the stock. The decisions of the Supreme Court of the United States on this point are, of course, conclusive on the state courts.

▇▇▇▇ The answer to the first question we have stated, therefore, depends upon whether the decision in the case last cited applies only to taxes which the state attempted to levy and collect *after* January 6, 1930, or whether it also affects taxes which, under the state statute, had accrued or been paid before that date. Whether a decision of the Supreme Court of the United States holding a state statute unconstitutional, so far as it applied to a given situation, has a retrospective effect upon actions taken and rights arising, on the theory that the statute was a valid one before such decision, has been before the courts several times. In the case of *First Nat. Bank & Trust Co.* v. *Maine,* 284 U. S. 312, 52 Sup. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401, the majority opinion intimated very strongly that the effect of the decision in *Farmers' L. & T. Co.* v. *State of Minnesota, supra,* was retrospective, although this was not specifically held. While three of the justices of the Supreme Court dissented from the opinion of Mr. Justice SUTHERLAND, they did not apparently question his dicta on that point. But so far as we are advised, there has been a definite adjudication of this question in four and only four, cases. The first case is *Harris* v. *Jex,* 55 N. Y. 421, 14 Am. Rep. 285. Therein the court held that the effect of such a

decision was not retrospective, in the following language:

"The plaintiff had a right to repose upon the decision of the highest judicial tribunal in the land. It was, as applied to the relations between these parties and to this case, the law, and not the mere evidence of the law."

In the case of *Stockton* v. *Dundee Mfg. Co.*, 22 N. J. Eq. 56, on virtually the same state of facts as in *Harris* v. *Jex, supra,* the New Jersey court held that the later decision was retrospective in its operation. In the later case of *People ex rel. Rice* v. *Graves*, 242 App. Div. 128, 273 N. Y. Supp. 582, 588, a similar question again arose. In May, 1928, the Supreme Court of the United States had held that states had no right to impose an income tax on income from royalties and copyrights. (*Long* v. *Rockwood*, 277 U. S. 142, 48 Sup. Ct. 463, 72 L. Ed. 824.) Following this rule, one Elmer L. Rice showed in his state income tax return large sums received by him from royalties on copyrights, but paid no state income tax thereon. On May 16, 1932, the United States Supreme Court, in the case of *Fox Film Corp.* v. *Doyal*, 286 U. S. 123, 52 Sup. Ct. 546, 76 L. Ed. 1010, expressly overruled its former decision, and held that income from copyrights was subject to a state income tax. The state of New York demanded from Rice that he pay an income tax on his earnings by royalties on copyrights for the years 1929, 1930, and 1931. The New York court said:

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort, and contracts have been made and rights acquired under and in accordance with such construction,

such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision. . . . Under the well-settled rules of jurisprudence of this state it must be held that the law as pronounced by the United States Supreme Court in *Fox Film Corporation* v. *Doyal* [*supra*], retroacts to the date of the overruled decision of *Long* v. *Rockwood* [277 U. S. 142, 48 Sup. Ct. 463, 72 L. Ed. 824], and that the law of this state is and always was that copyrights granted by the United States may be subject to the New York personal income tax."

The same question arose in the case of *Laabs* v. *Wisconsin Tax Com.*, 218 Wis. 414, 261 N. W. 404, 405. The Supreme Court of Wisconsin said:

"The Blackstonian doctrine, which is generally held, is that the later decision is retrospective in operation for the reason that courts declare, but do not make, law. In consequence, when a decision is overruled, it does not merely become bad law; it never was the law, and the later pronouncement is regarded as the law from the beginning. . . . While there would seem to be no middle ground in logic, between a complete adherence to or a complete repudiation of the Blackstonian doctrine, the courts nevertheless have established certain exceptions to it for the purpose of mitigating hardships created by its literal application. Without attempting to deal exhaustively with the subject, it may be said that, generally speaking, courts adhering to the rule that a later decision operates retrospectively, have created the following exceptions: (1) Where contracts have been entered into in reliance upon a legislative enactment as construed by the earlier decisions. (2) Where a legislative enactment has been declared valid by earlier decisions, and contracts have been entered into in reliance upon the statute and decisions. . . . While the exceptions above noted appear inconsistent, logically, with the Blackstonian doctrine, they are generally considered to constitute a wiser choice than the complete abandonment or complete enforcement of the doctrine."

We think the Supreme Court of Wisconsin has wisely chosen the middle course which avoids, as far as it is possible to do so, injustice to parties who have relied upon the earlier rulings of courts, which are later reversed by the same court, and we have no hesitation in adopting that rule as the law of Arizona. Our answer to the first question is, therefore, that, since the case does not fall within the exceptions, the executrix is not barred from making claim for a refund by reason of the fact that the last ruling of the Supreme Court of the United States, made after her payment of the tax, was contrary to the rulings in force at the time she made the payment.

■■ The second question is whether or not the fact that the payment by the executrix was voluntary will bar her from recovery. It is the general rule that taxes paid under a mistake of law, with full knowledge of the facts, cannot be recovered unless recovery is expressly or impliedly authorized by the statute. *Chesebrough* v. *United States,* 192 U. S. 253, 24 Sup. Ct. 262, 48 L. Ed. 432; Restatement of Restitution and Unjust Enrichment (Tentative Draft No. 1), § 40, p. 152; 61 C. J. 991, § 1270. And this rule applies to inheritance taxes as well as ordinary taxes. *In re Burroughs' Estate,* 137 Misc. 844, 244 N. Y. Supp. 640; *Beck* v. *Milwaukee County,* 196 Wis. 259, 219 N. W. 205. The answer to this question, therefore, depends upon whether our statute either directly or impliedly authorizes the refund of an inheritance tax paid as this was. Under our law, the proceeding for fixing the amount of inheritance tax from the estate of a decedent is substantially as follows: The tax, while commonly called an inheritance tax, is by the statute said to be imposed upon the transfer of property, or an interest therein, by will or inheritance. This tax is due and payable at the time of the transfer, and is a lien upon the property until paid. When the prop-

erty consists of stock owned by a nonresident, the tax may be paid to the state treasurer, but the final determination of the tax due in such a case is made by the superior court of Maricopa county, where the only purpose of the administration of an estate is the fixing and adjusting of such a tax. The law also provides that if the tax be paid within one year of its accruing, a discount is allowed; while if it is not paid within eighteen months after the accruing, the state collects interest upon the tax. Article 12, chap. 75, Rev. Code 1928. Since large estates frequently require a much longer period than a year for administration, it is often very advantageous to the estate to pay the tax before a final settlement and determination of the precise amount due is made. The law of Arizona recognizes this, and provides as follows in section 3166, Revised Code 1928:

"Refund; settlement when tax paid on estimate. . . . When a tax has been paid erroneously into the state treasury, the state treasurer, upon receiving a transcript from the court showing the facts, may refund from the treasury the amount of such erroneous or illegal payment to the person who paid such tax in error; or the state treasurer may order, direct and allow the treasurer of any county to refund the amount out of the funds in his hands or custody to the credit of such taxes, and credit him with the same in his next account. An application for such refunding of erroneous taxes must be made within one year from the payment thereof, or within one year after the reversal or modification of the order fixing such tax.

"Any person from whom such tax is or may be due may make an estimate of and pay the same to the county treasurer, at any time before the same is determined by the court, and shall thereupon be entitled to the discount and be relieved from any interest or penalty upon the amount so paid as if the tax were then determined. Any excess so paid shall be refunded to the person so paying or entitled thereto by such treasurer out of any inheritance tax money in his

possession, or by the state treasurer when the county treasurer is without such money, upon filing with such treasurer a copy of the order fixing such tax and the amount of refund due.''

The law also recognizes that at times there may have been an error made in the administration of an estate, by either the payment or the nonpayment of an inheritance tax, and provision is made for such a contingency under section 3176, Revised Code 1928, which reads in part as follows:

''Special administrator where tax not paid. When no application for administration of an estate is made within sixty days after the death of any person, and such estate appears to be taxable, or when administration has been completed without determining the tax, or when no tax is due and that fact has not been found by the court, or when any foreign will has been recorded, the court may appoint a special administrator to adjust and pay such tax, or if no tax is due to determine that fact.''

A careful reading and comparison of our statutes on the subject shows clearly that it was the intention of the legislature of Arizona to (a) provide for a method of paying inheritance taxes in advance of a final determination of the amount upon a tentative estimate being made by the proper official, in order that the estate might avoid penalties and interest; (b) that recognizing the fact that the tentative estimate might be in error, either for or against the state, the legislature provided that the payment was not final until after an order of a court of proper jurisdiction definitely and finally fixing the exact amount of the inheritance tax; and (c) that if, for any reason, the court had failed to fix the amount of such a tax, a special administrator might be appointed for that express purpose, which appointment gave the court jurisdiction to determine the true amount of the tax, or, if no tax was due, that such was the fact. We think this demon-

strates that the general rule in regard to the voluntary payment of taxes preventing a recovery thereof has been recognized by the legislature as being unjust in cases of advance payments of inheritance taxes, and that our law has provided a method whereby an inheritance tax voluntarily paid before a final judicial determination of the correct amount may be recovered by proper action.

We thus come to the question as to whether this action is barred by the statute of limitations. Section 3166, *supra,* provides:

"An application for such refunding of erroneous taxes must be made within one year from the payment thereof, or within one year after the reversal or modification of the order fixing such tax."

This fixes a period of limitation within which such action may be brought. It is the position of the state that the action must be brought within one year after the time of the voluntary payment on the *tentative estimate* provided for in the remainder of section 3166, *supra.* It is the contention of the petitioner that the statute applies only to payment made after a *final determination* of the amount. We have repeatedly held that while the defense of the statute of limitations is a legitimate one, it is not favored by the courts, and, where two constructions are possible, the one which gives the longer period of limitations is the one which is to be preferred. *Southern Pac. R. Co.* v. *Gonzalez,* 48 Ariz. 260, 61 Pac. (2d) 377; *Anderson* v. *Thude,* 42 Ariz. 271, 25 Pac. (2d) 272. The payment upon an estimate, such as was made in this case, is clearly not final nor binding upon either party, and it is not until the order of the court definitely fixing the amount of the tax that either the state or the executrix is able to determine whether the amount fixed is erroneous or not, nor is the treasurer in a position to determine finally whether any tax is due. The court,

and the court only, can determine this question with a binding certainty. Such being the case, we think it would be unjust to hold that the statute of limitations commences to run before it has been definitely and finally ascertained, by the only authority competent to do so, the true amount of the tax, or whether, indeed, any tax at all is due. We hold, therefore, that unless and until a court of competent jurisdiction has definitely determined the true amount of the tax, or that no tax at all was due, the statute of limitations does not commence to run against a payment upon an estimate made by virtue of section 3166, *supra*. Since it appears from the record that the proper court has never made any order in regard to whether or not an inheritance tax was due in the O'Malley estate, the correct procedure was followed in the present case of requesting the appointment of a special administrator to determine whether or not the tax was due, and that the statute of limitations does not commence to run until such determination.

The order of the superior court of Maricopa county dismissing the petition is set aside, and the case remanded, with instructions to proceed in accordance with the opinion expressed herein.

McALISTER, C. J., and ROSS, J., concur.