[Civil No. 4102. Filed December 18, 1939.]

[97 Pac. (2d) 225.]

WILLIAM PETERSEN, as State Treasurer and Estate Tax Commissioner of the State of Arizona, and NERI OSBORN, Jr., as Estate Tax Collector of the State of Arizona, Appellants, v. SOUTHERN ARIZONA BANK & TRUST COMPANY, a Corporation, Formerly Administrator of the Estate of WILLIAM MUSSER, Deceased, EDITH MUSSER and DOROTHY MUSSER, Appellees.

Mr. Joe Conway, Attorney General, Mr. Stephen B. Rayburn and Mr. Frank W. Beer, Legal Assistants to Estate Tax Commissioner, and Mr. William G. Christy, for Appellants.

Messrs. Darnell, Pattee & Robertson, for Appellees.

LOCKWOOD, J.—This is an action by Southern Arizona Bank & Trust Company, a corporation, hereinafter called the administrator, and Edith Musser and Dorothy Musser, hereinafter called plaintiffs, against William Petersen, as state treasurer and estate tax commissioner, and Neri Osborn, Jr., as estate tax collector of the state of Arizona, hereinafter called de-

fendants, asking in effect for an injunction prohibiting defendants from taking any proceedings for the assessment or collection of any additional inheritance tax on the estate of William Musser, deceased. The case was heard on an agreed statement of facts before the court sitting without a jury, and a permanent injunction was issued, as prayed for, whereupon this appeal was taken.

The factual situation out of which the case arose may be stated as follows: William Musser died intestate on the 6th day of October, 1932, being at the time of his death a resident of Pima county, Arizona. He left surviving him a wife, Edith Musser, and a daughter, Dorothy Musser, plaintiffs herein. After his death, Southern Arizona Bank & Trust Company, a corporation, was duly appointed administrator of his estate. The superior court of Pima county, which had jurisdiction of the proceeding, appointed three regular appraisers of the estate, and on February 1, 1933, they met with J. W. Buchanon, who was the duly appointed, qualified and acting special appraiser for Pima county, under section 3171, Revised Code of 1928, as amended by chapter 47 of the Session Laws of 1929, and the property of the estate which had at that time been inventoried, was appraised, such appraisal being approved in writing by the special appraiser and filed in the office of the clerk of the superior court. Thereafter, additional property having been discovered, the administrator prepared another inventory including all of the property of the estate, and after due notice given as required by statute, the special appraiser and the regular appraisers met and appraised all of the property, which appraisement was again approved in writing by the special appraiser and filed as required by law. On October 3, 1933, the administrator made a return to the treasurer of the property appraised at the first appraisement,

upon a printed form furnished him by the latter and showing all of the items of property then belonging to the estate, together with a large amount of other information concerning the estate. At the same time he sent to the latter the sum of $4,521.66 as payment of the inheritance tax upon the property set forth in the inventory. A receipt for this amount was duly executed by the treasurer and delivered to the administrator and by it filed in the records of the estate in the probate court. About six months later the treasurer notified the administrator that, in his opinion, a larger amount than that which had been paid was due the state as inheritance tax, both because improper deductions had been made and because much property had been inventoried as community when, in reality, it was separate property of the deceased, and offered to settle the matter without suit for a stated sum. After considerable discussion the administrator paid the additional sum of $665.82 as inheritance tax, and the treasurer delivered to the administrator a receipt for said amount as payment of the additional inheritance tax due on the estate, marking it ''this is a final receipt''. The administrator made a first account and petition for partial distribution on December 4, 1933, showing among other things the first payment of inheritance tax aforesaid. After proper notice of the hearing was given, the account was allowed and approved, and a decree of partial distribution was entered. On the sixteenth day of August, 1935, the administrator filed a final account and petition for distribution of the remainder of the estate. This final account showed among other things the additional inheritance tax above referred to and stated that all inheritance taxes due the state of Arizona had been paid. After due notice of hearing, the court approved the account, making the following finding:

"And it appearing that said account is in all respects true and correct and that it is supported by proper vouchers, and that all State, County and municipal taxes, . . . have been paid by said administrator; . . . "

and it was ordered that upon a distribution of property in accordance with the decree, and filing of vouchers, the administrator should be finally discharged. The discharge was formally made on October 1, 1935.

The matter remained in *status quo* until January 26, 1938, when a *subpoena duces tecum* was issued out of the office of the estate tax commissioner of the state of Arizona and served on the plaintiffs and the administrator, requiring them to appear before the commissioner to testify for the purpose of ascertaining whether an additional tax was due the state of Arizona on the estate of William Musser, and to bring with them all books and records relating to the estate. Thereafter these proceedings were started.

There are a number of questions raised by the appeal. We think the one first requiring consideration is whether on this state of the record the state of Arizona is precluded from contending that the entire amount of inheritance tax due on the estate of William Musser has not been paid. This will be determined by the construction of certain sections of article 12, chapter 75, Revised Code of 1928, as amended by chapter 47 of the Session Laws of 1929. This chapter, as amended, sets forth the entire statutory law of Arizona in regard to inheritance or estate taxes as it existed at the time of the death of William Musser, and up to the first day of July, 1937, when the new estate tax law adopted by the thirteenth legislature went into effect. Laws of 1937, chap. 27. The article, after setting up the circumstances under which an inheritance tax is due, the rate of the tax, and certain exemptions, continues with the method whereby

the tax should be ascertained and how it should be paid. We quote this latter portion of the law so far as necessary to a determination of the issue under consideration:

"§ 3166. *Refund; settlement when tax paid on estimate.* . . .

"Any person from whom such tax is or may be due may make an estimate of and pay the same to the county treasurer, at any time before the same is determined by the court, and shall thereupon be entitled to the discount and be relieved from any interest or penalty upon the amount so paid as if the tax were then determined. Any excess so paid shall be refunded to the person so paying or entitled thereto by such treasurer out of any inheritance tax money in his possession, or by the state treasurer when the county treasurer is without such money, upon filing with such treasurer a copy of the order fixing such tax and the amount of refund due."

"§ 3171 (as amended by chap. 47, session laws 1929) *Special appraisers; powers and duties.* . . . In counties having populations of more than thirty-five thousand, a special appraiser shall be appointed by the state treasurer . . . Such special appraiser shall, with the three regular appraisers, appraise every estate filed for probate in his county, and shall forthwith give notice in the mail to all persons known to have a claim, or interest in the property to be appraised, and also to such persons as the superior court may by order direct, of the time and place when he will appraise such property, and shall at such time and place appraise the same at its fair market value . . . He shall report such appraisal in writing to the court, together with the evidence received. In counties having a population of thirty-five thousand or over, every executor, administrator or trustee of any estate shall at least ten days prior to the first appraisement thereof, as provided by law, notify the said special appraiser in writing of such time and place of such appraisement, and no clerk of the superior court in such counties shall receive or file a copy of said appraisement until the executor, administrator or trustee

of any estate shall present a certificate from said appraiser showing that the said appraiser had attended such appraisement. If the appraisement of the regular appraisers and that of the special appraiser differ, the judge of the superior court shall, after hearing for that purpose, fix the amount of the appraisement. If it is shown by proper proof upon affidavit at the time of the appraisement that there is not an inheritance tax due upon the estate the special appraiser is hereby authorized and directed to issue a waiver of inheritance tax upon the estate. . . . All taxes levied and collected under this article, less any expense of collection, and the deductions authorized herein, shall be deposited by the state treasurer into the general fund."

"§ 3172. *Report of appraisers; hearing; how tax determined for different estates; procedure; right of appeal.* . . . At the hearing of the account of the administration the court shall examine such report, and from the report and other proofs forthwith determine the cash value of such estate and the amount of tax to be paid . . . Notice of such hearing shall be given in such manner as the court may prescribe, but notice in writing of such hearing shall be mailed to the state treasurer not less than twenty days before such hearing upon such blanks and containing such information as he may provide. . . . "

"§ 3174. *Judgment determining tax; rehearing.* Upon the determination by the court of the value of any estate and of the tax to which it is liable, an order shall be entered which shall include a statement of the date of death of the decedent; the gross value of the real and personal property of such estate, stating the principal items thereof; the deductions therefrom allowed by the court; the names and relationship of the persons entitled to receive the same, with the amount received by each; the rates and amounts of inheritance tax for which each such person is liable; the total amount of tax to be paid and the amount of interest or penalty due, if any. A copy of the same shall be delivered or mailed to the county treasurer, and no final judgment shall be entered in such estates until proof is filed with the court that such copy has so been delivered or mailed.

" . . . The attorney general, if he believes such appraisal or determination has been fraudulently, collusively or erroneously made, may make application, within two years after the entry of the order, to the supreme court for a reappraisal thereof. . . . "

"§ 3177. *Duties of state treasurer; of attorney general and county attorneys.* The state treasurer shall supervise and investigate the administration of the inheritance tax laws, and such particular estates to which the inheritance tax laws apply, throughout the state. . . . In an estate in which the inheritance tax collectable exceeds or probably exceeds one thousand dollars, the tax shall not be compounded or settled until the state treasurer has investigated such estate, made a report thereon, and consented thereto. The state treasurer shall prescribe such forms and prepare such blanks as may be necessary in inheritance tax proceedings in the courts or for the use of other persons."

"§ 3179. *Composition or settlement of tax may be made.* The county treasurer, with the written consent of the state treasurer, may enter into an agreement with the personal representative of any estate situate in his county, in which the remainder or expectant estate is of such nature that the taxes are not presently payable, or wherein the interest of the legatee or devisee is not ascertainable, or in a transfer of property of a non-resident decedent, and compound such taxes upon equitable terms, and grant discharges upon the payment of the taxes agreed upon. . . . "

We have construed the intent of the legislature as to the method of determining and collecting inheritance tax in the case of *O'Malley* v. *Sims,* 51 Ariz. 155, 75 Pac. (2d) 50, 54. Therein we said:

"A careful reading and comparison of our statutes on the subject shows clearly that it was the intention of the Legislature of Arizona to (a) provide for a method of paying inheritance taxes in advance of a final determination of the amount upon a tentative estimate being made by the proper official, in order

that the estate might avoid penalties and interest; (b) that recognizing the fact that the tentative estimate might be in error, either for or against the state, the Legislature provided that the payment was not final until after an order of a court of proper jurisdiction definitely and finally fixing the exact amount of the inheritance tax; and (c) that if, for any reason, the court had failed to fix the amount of such a tax, a special administrator might be appointed for that express purpose, which appointment gave the court jurisdiction to determine the true amount of the tax, or, if no tax was due, that such was the fact. . . . ''

■ It will be seen upon examining the statement of facts above set forth that there was a departure in many particulars from the procedure fixed by the legislature for the fixing and collection of an inheritance tax. In the first place, the payment of the inheritance tax was in all cases directed to be made to the county treasurer, and not to the state treasurer, the latter receiving the inheritance tax from the county treasurer on quarterly reports, as provided by section 3178, Revised Code of 1928, and not otherwise. In the second place, the state treasurer had no authority whatever to compromise or compound the taxes due from an estate; that could be done only by the county treasurer, though the written consent of the state treasurer to such settlement was required. In the third place, the only manner in which a final payment could be made was after a formal order of a court of appropriate jurisdiction definitely and finally fixing the exact amount of the inheritance tax. This order was never made. The facts show clearly that the state treasurer, without any statutory authority therefor, determined the amount of the inheritance tax due from the appraisal made by the regular and special appraisers and collected that amount directly from the estate, instead of through the county treasurer as provided by law. At a later

date, believing that an additional tax was due, he negotiated directly with the administrator and offered to compromise and compound the tax upon the payment of a fixed amount which was less than he believed was rightfully due. This again was without any authority of law, for the compromise or compounding of a tax could only be made by the county treasurer and not by the state treasurer. The court gave no notice to the treasurer of any hearing at which the amount of the tax should be determined, as provided by section 3172, *supra,* nor did it ever hold such a hearing or enter an order determining the tax, as provided by section 3174, *supra,* and therefore could not mail a copy of the order to the county treasurer, as required by the section last named. The record shows that the state treasurer and the administrator made up their minds as to how much tax should be paid without the determination or even the advice of the superior court and the county treasurer, the administrator paying the amount so agreed upon to the state treasurer and the latter accepting it as a full settlement of the total tax due, and the court approved a final account which showed the amount paid, without any explanation of how that amount was fixed or by whom.

It is urged by plaintiffs that it has been customary ever since the adoption of the amendment of the inheritance tax in 1929 for the superior courts of the state, the administrators of the various estates, and the state treasurer, to follow this method of settling inheritance taxes, and that we should accept it as being a correct interpretation of the law, because such custom was almost universal. A somewhat similar method of settlement was followed in the case of *O'Malley* v. *Sims, supra,* and we declined to hold that the heirs were bound by any such extra-legal pro-

516

cedure. We see no reason why the state should be bound under much similar circumstances.

It is also urged by plaintiffs that even though the statutory method of ascertaining the tax was not followed, yet the decree of settlement of the final account and distribution was a final decree in the estate rendered by a court of competent jurisdiction, which cannot be attacked collaterally, and that any proceeding to collect the tax is a collateral attack upon such decree. Section 4079, Revised Code of 1928, sets forth the effect of a decree of distribution as follows:

"*Decree of distribution; payment of taxes.* . . . Such decree is conclusive of the rights of heirs, legatees or devisees, subject only to appeal. A decree of distribution shall not be entered until the state, county and municipal taxes levied upon the property of the estate, have been fully paid."

This statute is taken from California, and the courts of that state have construed this provision repeatedly. They held that a decree is only binding as to the rights of the heirs, legatees and devisees, and is in no manner binding as to third parties or adverse claimants. *Finnerty* v. *Pennie,* 100 Cal. 404, 34 Pac. 869; *In re Rowland's Estate,* 74 Cal. 523, 16 Pac. 315, 5 Am. St. Rep. 464. Further than that, this is a proceeding by the state itself, and it is universally held that no judgment, decree or judicial proceeding binds the state except under the terms and conditions to which it has consented, and if those terms are not complied with, it is not bound thereby. *Berton* v. *All Persons,* 176 Cal. 610, 170 Pac. 151; *State* v. *Miser,* 50 Ariz. 244, 72 Pac. (2d) 408. That the legislature did not intend the state to be bound by a decree rendered under the circumstances appearing herein as to the amount of inheritance taxes due unless the statute was followed,

is shown clearly by the language of section 3176, Revised Code of 1928, which reads:

"*Special administrator where tax not paid.* When no application for administration of an estate is made within sixty days after the death of any person, and such estate appears to be taxable, *or when administration has been completed without determining the tax,* or when no tax is due and that fact has not been found by the court, or when any foreign will has been recorded, the court may appoint a special administrator to adjust and pay such tax, or if no tax is due to determine that fact. . . . " (Italics ours.)

█ Since it appears that in this case administration was completed without determining the inheritance tax in the manner required by law, it is plain that the state is not bound by the decree of distribution but may proceed to determine and collect the tax, if any be due. The question then is as to what procedure shall be followed in making such determination. We think this is indicated by section 38, chapter 27, Session Laws of 1937, which reads as follows:

"*Saving Clause.* The taking effect of this act shall in no wise affect any suit, prosecution or proceeding pending at the time, or any right which the state may have to claim a tax upon any property under the provisions of any existing law, for which no proceeding has been commenced. Where no proceeding has been commenced, the procedure of collecting any tax arising out of the provisions of any existing act impliedly repealed hereby, shall conform to the provisions hereof, nor shall the passage of this act affect any appeal, right of appeal in any suit pending or orders fixing tax, existing at the time this act takes effect."

It may be urged that the section applies only to acts which are *impliedly* repealed, and that since article 12, *supra*, was expressly repealed the saving clause does not apply to rights originating under that article. Even admitting that the express terms of the

saving clause do not cover proceedings under article 12, yet the general rule of law is that when the method of collecting a tax has been changed, even though the statute does not expressly so provide, rights originating under the old act are collected in the manner set forth in the new one. *In re Hubbs,* 31 Ariz. 252, 252 Pac. 515.

It is further suggested that the *subpoena duces tecum* issued in the present case is not authorized by chapter 27, *supra,* for the reason that section 20 thereof only covers cases when "the commissioner shall discover that reports and accounts have not been filed, and the tax, if any, has not been paid as provided in this act." There is nothing in the record which shows affirmatively that the subpoena was issued under section 20, *supra,* and even if it does not cover cases like the present one, we think the authority granted under subdivision 2 of section 34, chapter 27, *supra,* "For the purpose of ascertaining whether or not a tax is due, to issue subpoenas, administer oaths, and to take testimony, by the same means and in the same manner as allowed to courts of record" is ample to authorize the issue of a *subpoena duces tecum.*

There are other matters discussed in the briefs, but we think what we have already said makes it unnecessary to refer to them in this opinion.

Since the inheritance tax due from the estate of William Musser was not determined in the manner required by law and since the decree of distribution in his estate under these circumstances is not binding upon the state of Arizona, and since the defendants herein, by the provisions of chapter 27, *supra,* are granted authority to investigate the matter and determine whether a further tax is due and to subpoena all persons necessary in the same manner as a

court of record, and to require them to produce their accounts and papers, the superior court erred in granting the injunction, and the judgment is reversed and the case remanded with instructions to render judgment in favor of defendants.

ROSS, C. J., and McALISTER, J., concur.