Patsy Shirlene DEAN, Appellant,

v.

A. Jay CHAPMAN, an Individual, the State
of Oklahoma ex rel. A. Jay Chapman,
Chief Medical Examiner, Appellees.

No. 49166.

Supreme Court of Oklahoma.

Nov. 2, 1976.

Vaughn, Allen, Stack & Huckaby by Robert L. Huckaby, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Oklahoma City, for appellees.

DAVISON, Justice:

Appellant, Patsy Shirlene Dean, daughter of John Wesley Bell, a single man who died under circumstances as yet undetermined brought suit against the State Medicial Examiner in his official capacity and individually.

Appellant sought actual and punitive damages for:

1. The Chief Medical Examiner's refusal to conduct an autopsy when requested to by the District Attorney in Grady County which, allegedly violated the appellant's right to timely possession and control of her father's body, causing appellant to suffer mental and physical anguish, grief and stress.

2. The Chief Medical Examiner's conducting an autopsy upon the body of her father in an open and public place where the performance of the autopsy was open to public observation and recording—all allegedly done to create publicity and draw attention to the State Legislature's failure to appropriate additional funds requested by the chief Medical Examiner.

In answer to these allegations, the defendants filed a demurrer to the petition on the following grounds: (1) Court lacked jurisdiction in that the defendant Chapman is an officer of the State of Oklahoma and as to all allegations contained in the petition, he was engaged in a governmental function rendering him im-

mune to suit, and (2) that the petition failed to state sufficient facts to constitute a cause of action.

The trial court issued an order sustaining the demurrer, from which this appeal is taken.

In her petition, the appellant alleges that on July 7, 1975, her father died under circumstances as yet undetermined and that the District Attorney in and for Grady County, Melvin A. Singleterry, requested the Chief Medical Examiner to perform an autopsy upon the decedent's body under the terms and provisions of 63 O.S. §§ 944 and 945.[1]

Appellant further alleged that in conjunction with the above request, her father's body was delivered to the office of the Chief Medical Examiner at 5:00 P. M. on July 7, 1975, and that the Chief Medical Examiner refused to accept said body and refused to perform an autopsy.

The petition also contains allegations regarding the District Attorney of Grady County seeking and obtaining a Writ of Mandamus from this Court on July 9, 1975, which ordered the Chief Medical Examiner to perform an autopsy upon the body of appellant's father.

During the time between the refusal of the Chief Medical Examiner to perform

the autopsy and the redelivery of the body pursuant to the Writ of Mandamus, appellant alleges that the District Attorney of Grady County retained exclusive care, custody and control of the deceased.

Additionally, appellant alleged that on July 10, 1975, the Chief Medical Examiner performed an autopsy upon the body of her father in an open and public site adjacent to a National Guard Armory located in Oklahoma County, where the Chief Medical Examiner allowed open and public observation and recording of the condition of the body and the performance of the autopsy.

Appellant seeks $150,000.00 damages for mental pain, grief and suffering caused by the Chief Medical Examiner's refusal to conduct a timely autopsy; $150,000.00 for mental pain and suffering caused by the performance of the autopsy as alleged; and $200,000.00 in punitive damages.

In its order sustaining the demurrer, the trial court stated:

"* * * No recovery can be had for mental pain and anguish which is not produced by, conducted with, or the result of some physical suffering or injury to the person enduring mental anguish. * * *.

1. 63 O.S. § 944:
When necessary in connection with an investigation to determine the cause and/or manner of death and when the public interest requires it, the Chief Medical Examiner, his designee, a medical examiner or a district attorney shall require and authorize an autopsy to be conducted. In determining whether the public interest requires an autopsy the medical examiner or district attorney involved shall take into account but shall not be bound by request therefor from private persons or from other public officials.
The Chief Medical Examiner, his designee or a medical examiner, may collect such blood, fluid or body waste specimens as he deems necessary to carry out his duties as specified in this act. No autopsy authorization shall be required as a prerequisite to the collection of such specimens.
63 O.S. § 945:

When properly authorized, an autopsy shall be performed by the Chief Medical Examiner or such person as may be designated by him for such purpose. The Chief Medical Examiner or a person designated by him may authorize arterial embalming of the body prior to the autopsy when such embalming would in his opinion not interfere with the autopsy. The autopsy shall be made of such parts of the body as is deemed necessary by the person performing the autopsy. A full and complete report of the facts developed by the autopsy together with the findings of the person making it shall be prepared and filed in the office of the Chief Medical Examiner without unnecessary delay. Copies of such reports and findings shall be furnished to district attorneys and law enforcement officers making a criminal investigation in connection with the death. The next of kin, or any one of them if more than one, may designate a physician to be present when the autopsy is conducted.

It should be noted that the Supreme Court has permitted recovery for mental anguish in cases of willful wrong where mental suffering is recognized as ordinary, natural and proximate result of such wrong. Such a case was *Mushunkashey [Mashunkashey] v. Mashunkashey* [189 Okl. 60], 113 P.2d 190 (1941), and action for fraud in inducing plaintiff to enter into a bigamous marriage with the defendant. This Court does not believe that mental anguish arising from the performance of an autopsy pursuant to Court Order in open field where the body is partially decomposed is a case where mental anguish is recognized as an ordinary and natural consequence."

As the trial court suggests, one of the main issues presented is whether appellant pled sufficient *facts* to constitute willful acts.

In *Mashunkashey v. Mashunkashey*, 189 Okl. 60, 113 P.2d 190 (1941), this Court held:

" * * * [M]ental pain and suffering alone will ordinarily constitute but an element of damages. The latter is seldom a sufficient basis upon which to predicate an action. Usually it is compensable only when made an element of damages in an action *based upon a wrong which in itself is actionable.* [Cites omitted]. But mental pain and suffering may constitute the basis of an independent action in cases of wilful wrong of the character *where mental suffering is recognized as the ordinary, natural and proximate result of such wrong. * * *.*" [Emphasis added]

Appellant contends that a wrong which in itself is actionable has been pled, that is, that the State Medical·Examiner's actions interfered with the appellant's right to have immediate possession of her father's body. In support of this proposition, appellant relies to great extent upon *McPosey v. Sisters of the Sorrowful Mother,* 177 Okl. 52, 57 P.2d 617 (1936).

In the *McPosey* case, supra, plaintiff's wife died while in the defendant's hospital.

When the plaintiff requested that his wife's body be turned over to him and an undertaker he had sent to pick up the body, the hospital refused, then without permission, performed an autopsy.

In holding that the petition in the *McPosey* case stated a cause of action, this Court stated:

"We feel that a petition which alleges the right to a body, a refusal to deliver up said body on demand, and the performance of an *unauthorized* and wrongful dissection thereon while it is withheld, states a cause of action for damages for the interference with legal rights, and that mental anguish is a proper element of such damages." [Emphasis added] 57 P.2d 617 at 619.

Appellees contend that the *McPosey* case is not controlling for the cause of action involved in *McPosey* was for mental anguish suffered due to a *wrongful dissection* of a dead body, whereas in the case at hand, there was no wrongful dissection, for the autopsy performed was authorized by law.

A reading of the *McPosey* case in its entirety makes it clear that the cause of action which this Court upheld was a cause of action for wrongful dissection. As demonstrated by the following quote, the analysis used was one applicable in wrongful dissection cases:

"Damages for mental anguish on account of mutilation of a corpse are usually discussed under three heads, viz.: (1) Generally; (2) by a carrier; and (3) wrongful dissection. We are not particularly concerned with the general rule that a recovery may be had, since we have to apply the rule specifically in this case—wrongful dissection." 57 P.2d 617 at 618.

In the case now before us, the facts alleged in appellant's petition are not sufficient to constitute a separate and distinct action for wrongful dissection, for the autopsy performed in the instant case was authorized by law, and the delay alleged

could clearly not be construed as a wrongful dissection in and of itself.

This being the case, under the rationale of the holding in *Mashunkashey*, in order to constitute a cause of action for mental pain and suffering, the appellant needed to allege sufficient facts to show a willful wrong of such a character that mental suffering is recognized as an ordinary, natural and proximate result of such a wrong. We hold that appellant's petition did not state sufficient facts to constitute such a willful wrong.

Clearly, such a wrong is not pled by merely alleging that the Chief Medical Examiner refused to perform an autopsy when requested to, pursuant to statutory authority, by a District Attorney. To hold otherwise would in essence be holding that there can be no legitimate reason for refusing to perform an official duty.

Nor, was the conducting of an autopsy in an open area subject to public view such a willful act. Both Sections 950 and 951 of Title 63[2] anticipate the performance of autopsies in places other than the laboratories of the Chief Medical Examiner. There may be many legitimate purposes for conducting an autopsy out-of-doors. Accordingly, we hold that conducting an autopsy in such a setting does not constitute a willful wrong. Even if the conducting of an autopsy out-of-doors constituted a willful wrong, the wrong involved is not the type of wrong which is recognized to ordinarily and naturally result in mental suffering. Comment d. to § 46, of the Restatement of Torts, Second, describes that type of willful wrong generally recognized to ordinarily and naturally result in mental suffering. The Comment provides:

"The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. * * *.

* * * The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language. . . ."

Clearly, such a wrong was not alleged in the case before us.

---

2. 63 O.S. § 950:
"In the event it is necessary or advisable to perform an autopsy under the provisions of this act in some place other than the laboratories of the Chief Medical Examiner, said examiner may authorize payment of a reasonable fee for the use of an appropriate place for the performing of an autopsy, which payment shall be made upon a claim and submitted to the Board of Medicolegal Investigations."

63 O.S. § 951:
"The Chief Medical Examiner, his designee, or a medical examiner shall be authorized to transport bodies of deceased persons of whose death he is officially informed to an appropriate place for autopsy or for the performance of scientific tests; provided that, after said autopsy shall have been performed or such tests made, the bodies of such deceased persons shall be returned to the county from which they were brought, or, when so authorized by the district attorney of said county and upon request of the nearest relative of the deceased or other person who may be responsible for burial, the body may be transported to some place other than said county. The Chief Medical Examiner or his designee may authorize payment for the services in transporting the body to the place designated for autopsy, which shall be submitted upon a claim filed with the Board of Medicolegal Investigations."

In paragraph 16 of her petition, appellant attempts to characterize the acts alleged as willful and wanton as follows:

"The' above acts by A. Jay Chapman, Chief Medical Examiner of the State of Oklahoma, in indecently handling said body in said manner and resulting in the wanton mutilation thereof were reckless, willful, wanton, malicious, unlawful, and grossly negligent."

These allegations are not allegations of fact, but are attempts to characterize the facts previously alleged. Such attempts to characterize the alleged actions of the defendant were at best conclusions, and could scarcely be construed as facts.

This Court has on numerous occasions held that conclusions of fact or law which are not supported by evidentiary facts pled in the petition, are not to be considered as true by the trial court when ruling on the sufficiency of a petition. E. G., *Chastain v. Parkhurst,* Okl., 473 P.2d 239 (1970), and *State v. Liberty Nat. Bank and Trust Company,* Okl., 414 P.2d 281 (1966). Thus, the allegation contained in paragraph 16 of the petition, as quoted above, did not aid the appellant's allegations.

Having held that appellant's petition did not state a cause of action separate and distinct from the allegation of mental anguish, and having held that under such circumstances, the appellant was required to state sufficient facts to constitute a willful wrong of such character that mental suffering is recognized as the ordinary, natural and proximate result of such wrong, and having further held that the facts sufficient to allege such a willful wrong were not present in appellant's petition, we affirm the trial court's sustaining of the defendant's demurrer.

Having so found, we deem it unnecessary to discuss the question of governmental immunity.

Judgment affirmed.

All the Justices concur.