Simone L. MUNLEY, Appellant,

v.

ISC FINANCIAL HOUSE, INC.,
Appellee.

No. 48927.

Supreme Court of Oklahoma.

Sept. 26, 1978.

Ronald D. Cox, McMillan & Cox, Oklahoma City, for appellant.

John T. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellee.

IRWIN, Justice.

Simone L. Munley (appellant) commenced proceedings to recover actual and exemplary damages against ISC Financial House, Inc., (appellee) alleging that appellee, through its agents, employed harassment and coercive collection practices which invaded her privacy and caused her great emotional and mental distress and harm. The trial court sustained appellee's motion for summary judgment based on a finding that there is no material issue of fact to be determined and that by reason of appellant's testimony appellee's conduct may not reasonably be regarded as so extreme and outrageous to permit recovery by appellant. Appellant appealed.

On assignment to the Court of Appeals, Div. No. 2, the judgment of the district court was reversed and the cause remanded for further proceedings. Appellee filed its petition for certiorari.

The facts most favorable to appellant disclose that appellant and her former husband contracted a certain indebtedness during their marriage. Shortly after the indebtedness was incurred appellant and her husband were divorced. The divorce decree required the husband to pay the indebtedness but the loans fell into default. Appellee was unable to locate the husband and turned its collection efforts toward appellant. It is the collection of this indebtedness which appellant alleged that appellee, through its agents, employed harassment and coercive collective practices which invaded her privacy and caused her great emotional and mental distress and harm.

Appellants deposition discloses that appellee's agent first contacted appellant by telephone. Appellant was advised that the loan was delinquent and appellant said she would contact her husband. Appellant said she "was scared and so, at some point in there, I had my phone cut off * * *". She then said "so the next thing I know, I got these little notes on my door." Appellant states in her brief that appellee's agents went to her apartment on four to six different occasions. If appellant was at her apartment when the agent came by she would not answer or open the door and the agent would leave a business card. If appellant was not at her apartment the agent

would also leave his business cards. The agents would leave a note on their business cards for appellant to call them but she never did.

On one occasion the agent visited appellant's neighbor and inquired as to appellant's whereabouts and the condition and kind of furniture she had. She quoted the neighbor as saying "they said I was in trouble and they wanted to help me find my husband and things such as that." This neighbor called appellant at her office and told her "don't come home, there have been men here looking for you, asking all kinds of questions about you."

Appellee's agent contacted the manager of the apartments where appellant was living. It appears that appellant had changed apartments and the agent wanted to know where she had moved.

Appellee's agent also contacted appellant's former employer and wanted to know how to get in contact with her. Appellant said she "got the word because they called me to tell me that I was in trouble and I was delinquent on a note, or something to that effect."

The issue is whether the trial court erred in sustaining appellee's motion for summary judgment. On motion for summary judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. Such motion should be denied if under the evidence reasonable men might reach different conclusions from undisputed facts. *Flick v. Crouch*, Okl., 434 P.2d 256 (1967). In a case where defendant files a motion for summary judgment on the ground that there is no substantial controversy as to any material fact, the court, in ruling upon the motion, may disregard pleaded conclusions without alleged, or uncontroverted facts to support them. *Contractors of Engineering and Manufacturing of Oklahoma v. Williams Automatic Sprinkler Co. Inc.*, Okl., 527 P.2d 325 (1976).

The torts of intentional infliction of mental distress and invasion of privacy are part of a modern development in the law to afford some redress to plaintiffs who have suffered from certain previously non-actionable forms of anti-social behavior. Inherent in the development of these new forms of action is an attempt to strike a medium between some of the merely unpleasant aspects of human interpersonal relationships on the one hand and clearly unacceptable conduct on the other. There is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual. If recovery for damage done is to be afforded at all, there must be some test by which to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment.

In the context of a cause of action for intentional infliction of mental distress, this Court has recently spoken to the foregoing concerns. *Breeden v. League Services Corporation*, Okl., 575 P.2d 1374 (1978). In order to "draw the line", this Court in *Breeden*, supra, approved the test advanced in the Restatement of Torts (Second), § 46, that for the defendant's condut to be actionable as an intentional infliction of mental distress it must be of such a character as would reasonably be regarded as "extreme and outrageous". Also approved in *Breeden*, supra, was the two tiered adjudicatory process outlined in the Restatement of Torts (Second) § 46(h) & (j). In *Breeden*, supra, the Court said:

"The [trial] court, in the first instance, must determine whether the defendant's conduct *may* reasonably be regarded *so extreme and outrageous* as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability."

We agree with the trial court that appellee's conduct may not reasonably be regarded as so extreme and outrageous that an issue of fact was framed for submission to the jury on intentional infliction of mental distress.

We will now consider the question relating to invasion of privacy. 62 Am.Jur.2d, Privacy, § 39, page 736, states that improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damage for an invasion of privacy. It was also stated that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy. The Supreme Court of New Mexico adopted the above rule and said that it was in accord with the rule followed in recent years in most jurisdictions. *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

█ The American Law Institute, Restatement of the Law Second, Torts, Tentative Draft No. 22, Sec. 652, Chapter 28A, Invasion of Privacy, reads:

§ 652B. INTRUSION UPON SECLUSION

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

\*  \*  \*  \*  \*  \*

§ 652D. PUBLICITY GIVEN TO PRIVATE LIFE

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind which

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public."

The Supreme Court of Kansas in *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973), followed the Restatements Tentative Draft No. 13, which is very similar to the above tentative draft and adopted the "highly offensive to a reasonable man" standard for measuring liability in an action for invasion of privacy. *Froelich* was cited with approval in *Dawson v. Associates Financial Service Co. of Kansas, Inc.*, 215 Kan. 814, 529 P.2d 104 (1976) and the Court said:

"We are persuaded that the restatement rule is the proper rule to adopt. A creditor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to the debtor is subject to liability for such emotional distress, and if bodily harm to the debtor results from it, for such bodily harm. In a debtor-creditor relationship, the actions of the tort-feasor are compensable when they would be highly offensive to a reasonable man."

The Kansas court discussed *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So.2d 321 (1961) where the Alabama Supreme Court adopted the standard set forth in *Housh v. Peth*, 99 Ohio App. 485, 135 N.E.2d 440, affirmed 165 Ohio St. 35, in 133 N.E.2d 340, which stated "a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy, 'but that the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness' ". The Alabama court went on to point out that what constitutes "reasonable" action must depend largely on the facts of the particular case.

Our Court of Appeals cited with approval the Ohio case of *Housh v. Peth*, supra, in *Bennett v. City National Bank and Trust Co.*, Okl.App., 549 P.2d 393 (1976), and said:

"In the case now under review the telephone calls were all the more disturbing

because plaintiff was not the debtor from whom the Bank wished to collect nor was she secondarily liable on the debt. We hold defendant's intrusion into her home by use of the telephone, as revealed by the evidence in this case, was unwarranted, unreasonable, and constituted an invasion of her right to privacy and was therefore an actionable wrong. Assuming arguendo appellees' contention that a 'single' telephone call would not afford appellant a cause of action in trespass or invasion of privacy, appellant's petition sufficiently alleges an action against appellees 'for outrageous conduct.' See American Law Institute Restatement of the Law, Torts 2d, p. 46 et seq.; *Zimmerman v. Associate Discount Corporation,* 444 S.W.2d 396 (Mo.)."

In *Breeden, supra,* we adopted the standard advanced in the Restatement of Torts (Second), § 46, in actions based upon outrageous conduct causing emotional distress. We now adopt the standard advanced in the Restatement Tentative Draft No. 22, *supra,* in actions based upon invasion of privacy.

Considering the facts most favorable to the appellant the record will not support a finding that appellee's agents conducted themselves in a manner highly offensive to a reasonable person. According to appellant's own testimony, she avoided all contact with appellee's agents and refused to contact them. Appellee had a legitimate debt owed to it by appellant and her former husband and appellant was in possession of personal property securing the debt.

In our view, the trial court's sustention of summary judgment in favor of appellee was correct whether appellant's cause of action was for intentional infliction of mental distress or invasion of privacy.

CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.

LAVENDER, V. C. J., and BERRY, BARNES, SIMMS, JJ., concur.

WILLIAMS and DOOLIN, JJ., dissent.