Jimmie L. **WILLIAMS**, Appellant,

v.

**LEE WAY MOTOR FREIGHT, INC.** a Delaware Corporation, and John E. Vincent, an individual, Appellees.

No. 61175.

Supreme Court of Oklahoma.

Sept. 25, 1984.

Rehearing Denied Oct. 31, 1984.

Mathew Dowling, Oklahoma City, for appellant.

Foliart, Mills & Niemeyer by Glen D. Huff and W. Wayne Mills, Oklahoma City, for appellees.

KAUGER, Justice.

The novel question presented is whether the two year statute of limitations provided by 12 O.S. 1981 § 95(3) or the limitation period of one year prescribed by 12 O.S. § 95(4) governs the time to bring an action for intentional infliction of emotional distress.[1]  We find that § 95(3) is controlling.

Jimmie L. Williams (appellant-employee), was employed as a dock worker by Lee Way Motor Freight, Inc. (appellee-employer).  On May 1, 1981, Lee Way's assistant terminal manager accused Williams of stealing several bottles of mouth spray in the presence of his co-workers.  Subsequently, the employee was detained, interrogated, arrested, imprisoned, and fired from his job.  Approximately a month later, the larceny charges were dropped, and the employee was reinstated with full back pay.  He filed an action for intentional infliction of emotional distress on June 8, 1982.  The employer's demurrer to the petition was overruled, and an amended answer and a motion for summary judgment were filed asserting that the statute of limitations was a complete bar to the em-

---

1. It is provided by 12 O.S. 1981 § 95(3), (4): "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: ... Third.  Within two (2) years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. Fourth.  Within one (1) year: an action for libel, slander, assault, battery, malicious prosecution, or false imprisonment; an action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation ...."

ployee's cause of action. The trial court sustained the motion for summary judgment holding that the one year statute of limitations contained in 12 O.S. 1981 § 95(4) controlled.

The employee contends on appeal that because the cause of action for intentional infliction of emotional distress is not specifically enumerated in § 95(4), courts cannot read into the statute an exception which has not been expressed by the Legislature; that the express mention of one thing implies the exclusion of others not mentioned; and that even though the tort had its genesis in the tort of assault it comprises a separate and distinct basis for liability. The employer counters that Oklahoma did not acknowledge the tort of intentional infliction of emotional distress until *Dean v. Chapman*, 556 P.2d 257 (Okla.1976), and that because *Dean* adopted the Restatement of Torts (Second) comment (d) of § 46, it should also adopt the rationale of comment (b) of that section which states that intentional infliction of emotional distress may be regarded as an extension of the tort of assault.

## IS THE LIMITATION PERIOD FOR THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS GOVERNED BY 12 O.S.1981 § 95(3) or 12 O.S.1981 § 95(4)?

### A

Allowing actions for mental and emotional injury outside the scope of some traditionally recognized tort is relatively new. The tort of intentional infliction of emotional distress consists of intentional, outrageous conduct which results in infliction of mental suffering in an extreme form, and resembles an ancient predecessor—assault.

In describing the genesis of this new tort, Prosser noted, forty-five years ago, that in many cases courts strained to find a technical battery, assault, false imprisonment, trespass, or even an invasion of the right of privacy, as a tenuous excuse to permit parastic recovery for mental injury, when in reality mental suffering was the only substantial damage sustained. Prosser also suggested that the inherent problem could be solved if the technical torts were removed from the cause of action, and the separate and independent tort of intentional infliction of extreme mental suffering caused by outrageous conduct were recognized.[2]

Numerous jurisdictions, following Prosser's logic, now recognize that infliction of mental suffering as an independent cause of action.[3] Generally, states which have adopted the tort of intentional infliction of mental anguish have followed the Restatement of Torts (Second) § 46 (1965), as has Oklahoma. The right to recover damages for emotional distress is not dependent on physical injury. After *Dean v. Chapman*, a new tort was recognized which did not require maintenance of the fiction of theoretical physical impact or injury in order to justify the award of damages for mental anguish. *Dean* acknowledged that one, who by extreme and outrageous conduct wilfully or wantonly causes severe emotional distress to another, is subject to liability for emotional distress and for any bodily harm emanating from the distress.[4] The interest in mental and emotional security standing alone is regarded as sufficiently important to warrant protection through independent tort action—neither physical injury to, nor invasion of other interests of the claimant need be shown to establish a

2. *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681, 686–87 (1980); Prosser, "Intentional Infliction of Mental Suffering: A New Tort," 37 Mich.L.Rev. 874 (1939).

3. See *Ford v. Hutson*, 276 S.C. 157, 276 S.E.2d 776, 777–778 (1981) for collected cases.

4. In *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377 (Okla.1978) and *Dean v. Chapman*,

cause of action.[5] The law protects emotional and mental tranquility against serious and intentional invasions.[6] However, contemporary standards of civility do not allow recovery for every case of justified indignation. The tort requires some extraordinary transgression of the bounds of socially tolerable conduct.[7]

The litigants do not dispute that § 95(4) provides that actions for libel, slander, assault, battery, malicious prosecution, false imprisonment, or an action for penalty or forfeiture must be brought within one year unless the statute imposing it prescribes a different limitation. The employer argues that this section applies here because this tort is similar to assault. While we recognize the parasitic nature of this tort's origins, we decline to subordinate it to the older torts. There is no compelling reason, historic or otherwise, why the newer tort, given its independent status should be tied to the limitation period of its ancestors.

■ Nor do we find any basis for expanding the statute to include unenumerated torts. The tort of intentional infliction of emotional distress is neither addressed by statute nor parastically dependent on the existence of another cause of action. The maxim of statutory constriction that the expression of one thing or more excludes those not mentioned is applicable.[8] The tort of intentional infliction of mental distress must, therefore, be governed by

the more general two-year statute set forth in § 95(3) which applies to "an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated." Section 95 was originally written in 1910 and subsequently revised in 1953, 1961 and 1971. The statute was recodified in 1981 without change although the tort of intentional infliction of emotional distress had been adopted judicially some five years earlier. Accordingly, until such time as the legislature sees fit to classify this new tort, we must assume that the intent of the legislature is that it fall within the parameters of § 95(3).

B.

■ There is a second reason for finding that § 95(3) is controlling. Generally, if there is a substantial question of which of two or more statutes of limitations should be applied, the doubt should be resolved in favor of the application of the statute which contains the longest limitation.[9] This serves the legislative intent of protecting defendants from stale claims, yet provides an approach of liberality which affords a plaintiff party-litigant maximum free access to our court system.[10] Although statutes of limitation are primarily designed to assure fairness to defendants because they prevent claims from being brought when the relevant evidence is so old that it is unreliable, the policy of repose

556 P.2d 257 (Okla. 1976) the court virtually adopted the Restatement of Torts.

5. Byrd, "Recovery for Mental Anguish in North Carolina", 58 N.C.L.Rev., 435, 461 (1980).

6. See *State Rubbish Collectors Ass'n v. Siliznoff,* 38 Cal.2d 330, 240 P.2d 282, 285 (1952), in which Judge Traynor traces the evolution of the tort.

7. *Hall v. May Dept. Stores Co.,* 292 Ore. 131, 637 P.2d 126, 129 (1981).

8. A similar result was reached in *Stewart v. Thomas,* 538 F.Supp. 891, 898 (D.C.1982) and in *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325, 330 (1981).
*Expressio unius est exclusio alterius* is a rule of statutory construction which should not be ap-

plied to defeat legislative intent. *In re Arbuckle Master Conservancy Dist., Dist. Ct. Murray Co., No. 9660,* 474 P.2d 385, 391–92 (Okla.1970). We find that it is a helpful aid in this instance in the absence of legislative intent to the contra.

9. *Hughes v. Reed,* 46 F.2d 435, 440 (10th Cir. 1931); *Payne v. Ostrus,* 50 F.2d 1039, 77 A.L.R. 531 (1931); *O'Malley v. Sims,* 51 Ariz. 155, 75 P.2d 50, 115 A.L.R. 634 (1938); *Southern P.R. Co. v. Gonzalez,* 48 Ariz. 260, 61 P.2d 377, 106 A.L.R. 1012 (1936); *Shew v. Coon Bay Loafers, Inc.,* 76 Wash.2d 40, 455 P.2d 359, 366 (1969).

10. *Salavea v. City and County of Honolulu,* 55 Haw. 216, 517 P.2d 51, 54 (1973).

is outweighed where the interest of justice requires otherwise.[11]  For the reasons stated, we find that the applicable statute of limitations for the tort of intentional infliction of emotional distress is 12 O.S. 1981 § 95(3).

REVERSED.

SIMMS, V.C.J., and HODGES, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

BARNES, C.J., and LAVENDER and OPALA, JJ., dissent.

HARGRAVE, J., disqualified.

OPALA, Justice, dissenting.

The court pronounces today that a two-year statute of limitations, prescribed in 12 O.S. 1981 § 95(3),[1] is applicable to the so-called tort of outrage.[2]  Today's holding is rested upon a canon of construction known as *expressio unius est exclusio alterius*,[3]

or more accurately here, as *enumeratio unius est exclusio alterius*.[4]  Invoking this rule the court reasons that because the tort of outrage is not included *eo nomine* among the delicts enumerated in § 95(4)[5]—those which are governed by a one-year time bar—it *necessarily* falls into the unenumerated class provided in § 95(3).  The latter are governed by a two-year limitation.  I cannot accede to this view.

Whenever this court's jurisprudence extends recognition to a delictual claim not previously cognizable by the common law of this state, the time bar applicable to it is that which our statutory law provides for the class of litigation into which the new tort falls.[6]  It is hence my opinion that the one-year period of limitations found in § 95(4) should be applied to the newly-formulated tort of outrage.  Subdivision 4 clearly embraces *all* the *wilful* invasions of a person's protected interest, *both* in freedom from bodily harm and from restraint, which were, at the time of its enactment,

---

**11.** *Burnett v. N.Y. Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).

**1.** The terms of 12 O.S. 1981 § 95(3) are:
"Civil actions other than for the recovery of real property can only be brought within the following periods ...

      \*    \*    \*    \*    \*    \*

Third.  Within two (2) years; ... an action for injury to the rights of another, not arising on contract, and not *hereinafter* enumerated ... \* \* \*" [emphasis supplied].

**2.** The tort of outrage, which rests on an independent theory of intentional, reckless infliction of emotional distress, has been formulated by Restatement (Second) of Torts § 46 [1964].  In the text of that section the delictual claim is defined in the following words: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to the liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. \* \* \*"  Liability attaches only where the actor's conduct has been extreme and outrageous.  It does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.  According to the comments, § 46 applies only where the actor desires to inflict severe emotional distress; where he knows that such distress is certain or is substantially cer-

tain to result from his conduct; or where he acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow; and that the section applies only where the emotional distress has in fact resulted, and where it is severe.

**3.** See footnote 17 infra.

**4.** The maxim *enumeratio unius est exclusio alterius* means the specification of one thing is the exclusion of a different thing.  Black's Law Dictionary [5th Ed.1979] page 479.

**5.** The terms of 12 O.S. 1981 § 95(4) are:
"Civil actions other than for the recovery of real property can only be brought within the following periods ...

      \*    \*    \*    \*    \*    \*

Fourth.  Within one (1) year: An action for ... *assault, battery, malicious prosecution, or false imprisonment;* ... \* \* \* [emphasis supplied].

**6.** Our recognition of this new tort was first pronounced in *Dean v. Chapman,* Okl., 556 P.2d 257 [1976], and later reaffirmed in *Breeden v. League Service Corp.,* Okl., 575 P.2d 1374, 1377 [1978].

cognizable by the common law of Oklahoma.[7]

## I

## THE DISPUTE

According to the plaintiff's allegations, the harm to be vindicated came to be inflicted when he was *wrongly detained* and *falsely accused* of stealing company property. These acts resulted in his arrest, imprisonment and dismissal from the job. After charges were dropped and his employment was reinstated, he brought this suit against his employer and the assistant terminal manager, alleging that the acts complained of were "extreme, outrageous and beyond the bounds of human decency" and were "intentionally and maliciously perpetrated" for the purpose of causing him to suffer *extreme emotional and physical distress.* The trial court sustained the defendants' "motion for summary judgment".

## II

## THE PROCEDURAL POSTURE

The judgment here under review is not a Rule 13 disposition[8] but one on the pleadings.[9] The defendants failed to provide the court with *any* evidentiary material in support of their plea that there was an absence of controverted facts. The court's decision was implicitly, if not explicitly, grounded on the trial judge's view that the alleged false imprisonment and tort-of-outrage claims were both barred by the one-year statute of limitations in § 95(4).

The plaintiff clearly sought to rest his claim on two distinct theories of recovery; one for false imprisonment and another in tort of outrage. Regardless of what we do here with respect to the timeliness of the tort-of-outrage claim, the judgment under review *must be affirmed* insofar as it bars the plaintiff's false imprisonment suit. The latter clearly is barred by the one-year limitations period provided in § 95(4). We may not speculate here that on remand of this case the plaintiff will be able to show more than a tort of false imprisonment.[10] The trial court's judgment should hence be affirmed at least in part.

## III

## TORTS INTRODUCED BY RECENT JURISPRUDENCE MUST BE GOVERNED BY LIMITATIONS PROVIDED IN THE LEGISLATIVE CLASSIFICATION SYSTEM

By the terms of 12 O.S. 1981 § 2 the legislature gave this court the power to

---

**7.** Although there were intervening amendments, the *present-day language* of subdiv. 4 [now 12 O.S.1981 § 95(4)] is *exactly* the same as that in its *initial enactment.* St. 1893 § 3890.

At the time subdiv. 4 was first enacted, the plain intention of the legislature was that *all wilful* invasions of a person's protected interest in freedom from bodily harm or restraint be governed by a one-year limitation. Violence is done to the statutory time-bar scheme when an after-formulated delict is declared to be governed by a limitations period different from that intended for the very class of litigation into which it falls.

**8.** A judgment under Rule 13 is one where the material facts appear to be uncontroverted from the evidentiary material tendered with the motion. Rule 13, Rules for District Courts of Oklahoma, 12 O.S. 1981, Ch. 2, App.

**9.** *Beck v. Bacone College,* Okl.App., 604 P.2d 876, 877 [1980]; *Wabaunsee v. Harris,* Okl., 610 P.2d 782, 784 [1980]; *Weeks v. Wedgewood Village,* Okl., 554 P.2d 780, 785 [1976].

**10.** Several legal hurdles have to be overcome before a tort-of-outrage claim may warrant submission to the jury. The trial court must initially determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery. It is also for the court to determine, in the first instance, whether, based upon the evidence presented, a claim for severe emotional distress is supportable. Where, under the facts before the court, reasonable men could differ, it is then for the jury to find whether the defendant's conduct in any given case has been significantly extreme and outrageous to warrant imposition of liability. *Breeden v. League Service Corp.,* supra note 6 at 1377; Restatement (Second) of Torts § 46, comment h; see also *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 [1981].

change the common law,[11] but it did not authorize the court to fashion limitation periods for newly-created torts. Since the notion of a fixed time for the bringing of actions was unknown to the common law, the power to limit the time must be regarded as exclusively legislative.[12] Because the power to alter limitations is reposed in the legislature, we are bound by the statutory scheme.[13] Statutory limitations bind the courts even in those jurisdictions in which,

by a constitutional grant, "procedure" is subject to exclusive regulation by court-fashioned rules.[14]

When the legislature fails to bring in by name some new, judicially-created tort, we must adopt for it the most analogous statute of limitations in the existing catalogue.[15] The plaintiff's claim for psychic harm intentionally inflicted by the defendant's allegedly outrageous conduct should be declared to be governed by the very

**11.** The terms of 12 O.S. 1981 § 2 provide in part:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma * * *".
*McCormack v. Okl. Publishing Co.,* Okl., 613 P.2d 737, 740 [1980].

**12.** Limitations are created by statute and derive their force from it. They are hence legislative and not judicial acts. *Lake v. Lietch,* Okl., 550 P.2d 935, 937 [1976].

**13.** In Oklahoma there is a strong policy against any alteration of statutory limitations:
(A) Parties are constitutionally prohibited from reducing limitations by contract because legislatively-prescribed limitations are beyond the reach of the parties. Art. 23 § 9, Okl. Const.; *Uptegraft v. Home Insurance Co.,* Okl., 662 P.2d 681, 686 [1983]. (B) Limitations are also beyond the reach of the courts because they are of parliamentary and not common-law origin. The only limitation developed by the common law was the so-called "immemorial prescription". It was not until the 17th Century that Parliament passed legislation providing fixed time limits within which an action must be brought. See Opala, *Praescriptio Temporis* and its Relation to Prescriptive Easements in the Anglo-American Law, 7 Tulsa L.Rev. 106, 111–113, 124 [1971]. (C) By the terms of Art. 5 § 46, Okl. Const., the legislature is prohibited from tampering with limitations by fashioning special limitations and making unreasonable classifications. *City of Tulsa v. McIntosh,* 141 Okl. 220, 284 P. 875 [1930]. The vice of a special law is that it does not embrace the whole class naturally falling within its scope. Limitations must therefore be uniform for each class and based on reasonable classifications. When the legislature enacted § 95(4), it classified for a one-year limitation treatment all the then-known torts that deal with invasion of one's freedom from intentional bodily harm or restraint—a category that would clearly encompass the tort of outrage. Just as the legislature itself would not have been able to create a special category for

the tort of outrage by fashioning for it a distinct period of limitations, so is the Supreme Court restrained by the same rule from doing that which the constitution expressly prohibits the legislature from doing. *Loyal Order of Moose, Lodge 1785 v. Cavaness,* Okl., 563 P.2d 143, 147 [1977], 93 A.L.R.3d 1234.

**14.** In a conflict-of-law analysis limitations of actions are considered to be an integral part of adjective law, i.e. rules relating to commencement, maintenance and prosecution of suits. Restatement (Second) Conflicts of Law § 122, Comment a [1969]; *Barnhill v. Public Service Co. of Colorado,* 649 P.2d 716, 718–719 [Colo. App.1982], and is governed by the law of the forum. But even in those states—i.e. New Jersey—where "procedure" is subject to exclusive regulation by court-fashioned rules, statutory limitations bind the courts. See *Winberry v. Salisbury,* 5 N.J.Super. 30, 68 A.2d 332 [1949], affd. 5 N.J. 240, 74 A.2d 406 [1950], cert.den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 [1950]. While the New Jersey Supreme Court has a constitutional "monopoly" on procedure, it draws a line of demarcation between procedure within its power to regulate by rules and policy decision-making that still remains in the legislature. In *Winberry,* supra, the court followed the historical antecedents of the common law and held that limitations of actions are not merely procedural rules for the courts to fashion.

**15.** Federal courts, which follow a similar scheme when Congress creates new causes of action but fails to provide for a statute of limitations, adopt the most analogous limitations period enacted by state law. See *Equal Employment Opportunity Commission et al v. Gaddis,* 733 F.2d 1373, 1376–1377 [10th Cir.1984]; *Board of Regents v. Tomanio,* 446 U.S. 478, 483–484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 [1980]; *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 [1975]; *Garcia v. Wilson,* 731 F.2d 640, 642–643 [10th Cir.1984]. See also *Smith v. Cremins,* 308 F.2d 187 [9th Cir.1962] and Annot., 98 A.L.R.2d 1160.

same limitations period that applies to *all* other wilful invasions of a person's protected interest in freedom from bodily harm and from restraint. Those invasions are set out as a separate tort class in 76 O.S. 1981 § 6 [16]. The entire class is governed by a one-year time bar in 12 O.S. 1981 § 95(4).

## IV

## THE EXPRESSIO-UNIUS-EST-EXCLUSIO-ALTERIUS RULE OF CONSTRUCTION IS INAPPLICABLE IN DETERMINING THE PERIOD OF LIMITATIONS THAT GOVERNS A TORT INTRODUCED INTO THE LAW BY RECENT JURISPRUDENCE

The general rule that the express mention of one matter excludes other similar matters that are not mentioned [17] has no application to this case. This is so because, while the maxim may be effective to exclude from § 95(4) any wilful tort known to the common law *when the statute was enacted*, it cannot operate to exclude judicially-created—or later-promulgated—torts of the enumerated class which were unknown to the common law of this state. It would be absurd to say that the legislature intended to exclude from its original statutory classification scheme any wilful torts not yet in existence. The court thus may not infer from the enumeration of existing torts the exclusion of those yet to be given judicial birth. [18]

The traditional wilfulness/negligence dichotomy in actionable wrongs was recognized by this court in *Scott v. Bradford.* [19] There, this court adopted a variant of medical responsibility tort known as lack of informed consent. While, in the malpractice context, *lack of consent* constitutes a common-law assault and battery, the modern delict, rested on *lack of informed consent,* is rightly viewed as rooted in negligence. In at least one jurisdiction, a medical malpractice claim founded on lack of informed consent is deemed to fall, not within the one-year limitations for wilful tort, but rather within the longer period provided in that jurisdiction for negligence cases. [20] On similar principles products liability actions are held to be governed by

---

**16.** The terms of 76 O.S. 1981 § 6 are:

"Besides the personal rights mentioned or recognized in the Political Code, every person has, subject to the qualifications and restrictions provided by law, [1] *the right of protection from bodily restraint or harm,* [2] from personal insult, from defamation, [3] and from injury to his personal relations." [emphasis mine].

It is clear that the first two classes of delicts set out in § 6 were intended by the legislature to be governed by a one-year limitation and that the tort of outrage falls within the first of these three. The third class is governed by a two-year limitation period. For a breakdown of torts to one's personal relations, see 76 O.S. 1981 § 8.

**17.** This maxim, known as *expressio unius est exclusio alterius,* is an auxiliary rule of statutory construction to be applied with great caution and is not conclusive as to the meaning of the statute. It is applicable only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the statute. Accordingly, the rule will not preclude the application of the statute to things of the same class as those expressly mentioned which have come into existence since the passage of the statute.

*Spiers v. Magnolia Petroleum Co.,* 206 Okl. 509, 244 P.2d 852, 856–857 [1952]; *Hardesty v. Andro Corp. - Webster Division,* Okl., 555 P.2d 1030, 1036 [1976].

**18.** *Cf. Dickens v. Puryear,* supra note 10, 276 N.E.2d at 330, which follows the maxim *expressio unius est exclusio alterius,* reaches the same result as this court's pronouncement today. I reject the rationale of *Dickens* for the reasons discussed herein.

**19.** Okl., 606 P.2d 554, 557 [1980].

**20.** *Nelson v. Patrick,* 58 N.C.App. 546, 293 S.E.2d 829 [1982]. For an example of the difference between common-law battery by a physician who operates without the patient's consent and negligence of a physician, see *Perna v. Pirozzi,* 92 N.J. 446, 457 A.2d 431 [1983].

limitations applicable to *ex delicto* actions in negligence.[21]

I would affirm the trial court's judgment by which the tort-of-outrage claim—a wilful judge-generated tort—was held barred by the same limitation as that which is applicable to both assault and battery and false imprisonment.

BARNES, C.J., and LAVENDER, J., join in this dissenting opinion.

21. *Thiry v. Armstrong World Industries,* Okl., 661 P.2d 515, 519 [1983] (concurring opinion by Opala, J.); *Kirkland v. General Motors Corporation,* Okl., 521 P.2d 1353, 1361 [1974]; *O'Neal v. Black & Decker Manufacturing Company,* Okl., 523 P.2d 614, 615 [1974] and *Nichols v. Eli Lilly & Co.,* 501 F.2d 392, 393 [10th Cir.1974].