Vicki FLOYD, Appellee,

v.

Robert L. DODSON, Appellant.

No. 60970.

Court of Appeals of Oklahoma,
Division No. 4.

Nov. 27, 1984.

Released for Publication by Order
of the Court of Appeals
Dec. 21, 1984.

Jack S. Dawson, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for appellee.

Steven Clark and Ted Sherwood, Abel, Musser, Sokolosky & Clark, Oklahoma City, for appellant.

STUBBLEFIELD, Judge.

In this action for foreclosure of a "joint venturer's lien" and damages for intentional infliction of emotional distress, the defendant appeals the jury's verdict and award of damages in favor of the plaintiff on both causes of action. The plaintiff cross-appeals for attorney fees on her first cause of action. After reviewing the record and applicable law, we affirm the judgment rendered in favor of the plaintiff on her first cause of action but reverse and remand the matter for new trial on plaintiff's second cause of action. We find that plaintiff was entitled to recover a reasonable attorney fee and remand the case with instructions to conduct an evidentiary hearing to determine such fee and assess the same against the defendant.

I

In September 1979, the plaintiff, Vicki Floyd, and the defendant, Robert L. Dodson, began living together in a house located in northwest Oklahoma City. Although the home had been transferred to Dodson in Dodson's name alone, Vicki had supplied a portion of the proceeds used for the down payment and testified at trial that she and Dodson were "partners" in its purchase. Dodson denied the existence of this agreement but conceded that Vicki had expended money on improvements to the home.

At the time of the purchase, the parties had planned to be married. By September 1980, however, their relationship had crumbled, and Dodson demanded that Vicki move out of the house. Although Vicki complied, she filed a "joint venturer's lien" against the property to protect her financial interest.

In the years which followed, Vicki, an insurance agent, moved to Stillwater, and Dodson, a landman, remarried. The decline of the oil and gas industry coupled with the financial obligations of his new marriage, however, soon forced Dodson to enter into a contract for the sale of the home. Several days before closing, he learned for the first time of the existence of the lien.

Outraged by the discovery, he drove to Stillwater the next day, carrying with him several nude photographs of Vicki and a cassette tape upon which he had secretly recorded their love-making. At trial, he conceded that his purpose in making the trip was to threaten Vicki into releasing the lien in return for the embarrassing information. Vicki, who was worried about the effect of the photographs on her career, agreed to meet Dodson in a parking lot in Oklahoma City later that afternoon. Dodson had already arranged for the presence of a notary public. Vicki signed the releases in the notary's presence and retrieved the photographs and cassette recording.

On September 9, 1982, she filed suit against Dodson. Later amendments limited the lawsuit to two causes of action: the first, to foreclose a lien on proceeds held in escrow from the sale of the house; and the second, for intentional infliction of emotional distress. On May 16, 1983, the jury rendered judgment in her favor on both causes of action.

II

■ For the sake of clarity the defendant's arguments will be taken out of the sequence in which made. The defendant's

attack on the judgment for plaintiff on her first cause of action is that the evidence is insufficient to support the jury's verdict. By her first cause of action the plaintiff sought to foreclose the "joint venturer's lien" which she had filed against the defendant's property several years earlier. Her purpose in filing the lien was to protect her $5,505 investment which she claims was used as the down payment for the purchase of the home pursuant to the parties' agreement that she would be eventually repaid from the accumulated equity. At trial, the defendant denied both the existence and the amount of this investment. He further sought to offset the amount claimed through the introduction of an exhibit which detailed the numerous expenditures which he had made on her behalf. It is this testimony which forms the basis of his present contention on appeal. His contention, however, neglects the fact that on cross-examination he repeatedly admitted that the vast majority of the expenditures depicted by the exhibit were not conditioned on the plaintiff's promise of repayment. He additionally failed to either plead or request that the jury be instructed on the defense of payment and instead defended the action solely by denying the existence of the loan and the parties' alleged agreement which formed the basis of the plaintiff's claim to an equitable lien in the property. On the basis of these facts, we cannot say that there is no competent evidence to support the jury's determination that such an agreement in fact existed. *Bredy v. Cantrell,* 205 Okl. 9, 234 P.2d 381 (1951). The jury obviously believed the testimony of the plaintiff and disbelieved that of the defendant. The judgment on the verdict in her first cause of action is accordingly affirmed.

### III

■ Defendant next contends that the trial court improperly instructed the jury on the elements of intentional infliction of emotional distress. The instruction, which corresponds with Oklahoma Uniform Jury Instruction—Civil, No. 19.1, provided that:

> For the plaintiff, Vicki Floyd, to recover from the defendant, Robert L. Dodson, on her claim of emotional distress, pain or anguish, you must find all three of the following have been established:
>
> 1. The defendant intentionally injured the plaintiff or realized that the plaintiff was likely to suffer the injuries complained of or acted with willful disregard of injuries that plaintiff might suffer.
>
> 2. *The defendant's actions were unreasonable.*
>
> 3. The plaintiff suffered physical injury as a direct result of the defendant's conduct. Injuries to the nervous system and mental pain are physical injuries. (Emphasis added.)

The defendant requested an alternative instruction because the instruction permitted the jury to impose liability for conduct which was merely unreasonable as opposed to extreme and outrageous. The trial court refused to revise the instruction because it paralleled that which appears in the Oklahoma Uniform Jury Instructions.

The preface to the uniform instructions requires all trial courts to use the instructions where appropriate "unless the trial court determines that such recommended instruction does not accurately state the law. In the latter event, it shall be the obligation of the trial court to include within the record the court's reasons for declining to use the recommended instruction."

Although the language recited in the instruction finds some support in the language of the court of appeal's decision in *Bennett v. City National Bank and Trust Co.,* 549 P.2d 393, 397 (Okla.Ct.App.1976), the more recent pronouncements of the supreme court have clearly required the actor's conduct to have been extreme and outrageous and not merely unreasonable:

> The torts of intentional infliction of mental distress and invasion of privacy are part of a modern development in the law to afford some redress to plaintiffs who have suffered from certain previously non-actionable forms of anti-social behavior. Inherent in the development of

these new forms of action is an attempt to strike a medium between some of the merely unpleasant aspects of human interpersonal relationships on the one hand and clearly unacceptable conduct on the other. There is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual. If recovery for damage done is to be afforded at all, there must be some test by which to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment.

In the context of a cause of action for intentional infliction of mental distress, this Court has recently spoken to the foregoing concerns. *Breeden v. League Services Corporation*, Okl., 575 P.2d 1374 (1978). *In order to 'draw the line', this Court in Breeden, supra, approved the test advanced in the Restatement of Torts (Second), § 46, that for the defendant's conduct to be actionable as an intentional infliction of mental distress it must be of such a character as would reasonably be regarded as 'extreme and outrageous'.* *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1338 (Okl.1978) (emphasis added). *See also Williams v. Lee Way Motor Freight, Inc.*, 688 P.2d 1294 (Okl.1984); *Breeden v. League Services Corp.*, 575 P.2d 1374 (Okl.1978); *Dean v. Chapman*, 556 P.2d 257 (Okl.1976). The higher standard has been deemed necessary to prevent the imposition of liability for petty insults or conduct which is merely insulting or inconsiderate. Although we find it difficult to believe that the jury, had it been properly instructed, would have characterized the defendant's conduct to have been anything but "extreme and outrageous," that determination was not made by the trier of fact nor by the trial court as a matter of law.

On remand, when the jury is properly instructed it may judge the defendant's conduct by the proper standard set out herein and assess any damage it finds appropriate—compensatory and/or punitive. We do not choose to remove this determination from the proper trier of fact.

## IV

The defendant next contends that the trial court erred in refusing to instruct the jury on punitive damages. Both the plaintiff and the defendant requested that such an instruction be given. The trial court, however, refused and instead instructed the jury that:

To assess actual damages, you must find that the plaintiff sustained actual injuries as a direct result of the claimed emotional distress.

The plaintiff is entitled to an amount of dollars to compensate for all injuries directly caused by the emotional distress, whether they could have been anticipated or not, including:

1. emotional distress;

2. any physical discomfort or inconveniences.

. . . .

The total amount to be awarded if any for emotional distress suffered by plaintiff cannot exceed the amount sought, to wit: $55,505.00.[1]

At trial, plaintiff testified to the embarrassment, humiliation, and physical discomfort which she suffered as a result of the defendant's conduct. She had not sought medical treatment, and all testimony consisted only of subjective accounts of the injuries which she suffered. The jury returned a verdict in her favor in the amount of $10,000.

In denying the parties' request for an instruction on the measure of punitive damages, the trial court was under the apparent belief that punitive damages were

---

**1.** Although the trial court refused to instruct on punitive damages, it did instruct the jury that they could return a verdict on the second cause of action for $55,505. Since $50,000 of that sum was clearly delineated as punitive damages, we are at a loss to understand this seeming contradiction.

not recoverable in an action for intentional infliction of emotional distress. Contrary to the trial court's belief, however, punitive damages are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Restatement (Second) of Torts* § 908(1)(1979). To warrant their recovery, all that is necessary is a showing that the defendant acted with malice, fraud, or oppression, and it is only in those cases in which there has been offered no evidence of malice or fraud that the trial court may properly refuse to instruct the jury thereon. 23 O.S.1981 § 9; *Spokin v. Premier Pontiac, Inc.,* 539 P.2d 1393, 1397 (Okl.Ct.App.1975). The jury may not return a verdict for punitive damages unless the issue was submitted to them under proper instruction. *Remund v. McCool,* 50 Okl. 69, 72, 150 P. 1055, 1057 (1915).

■ Herein, the plaintiff's proof clearly did not support an award of actual damages in the amount of $10,000. Plaintiff had, in fact, prayed only for $5,505 in actual damages and $50,000 in punitive damages. The jury, as is evidenced by the size of the award, however, clearly did seek to punish the defendant and award damages in excess of the claimed compensatory damages, even in the absence of an appropriate instruction. The trial court's refusal to instruct the jury on punitive damages was accordingly not only error but further necessitates our reversal of the case because it is now impossible to distinguish that portion of the jury's award which represents the amount of damages actually sustained by the plaintiff from that portion of the award which was meant to punish the defendant. The judgment as to the second cause of action is therefore reversed, and the trial court is directed to instruct the jury on the issue of punitive damages on remand.

## V

■ The plaintiff has lastly cross-appealed for attorney fees on her first cause of action. The trial court denied her request, apparently on the basis that the factual situation presented did not justify the rendition of such an award.

Plaintiff's first cause of action is one which sought the imposition of an equitable lien on the proceeds of the sale of the property upon which she claimed a lien. *See Bredy v. Cantrell,* 205 Okl. 9, 234 P.2d 381 (1951). Even though plaintiff released her lien on the property so that it could be sold, she did so only after a sufficient sum was placed in escrow to pay the amount of her claimed lien.

Title 12 O.S.1981 § 686, provides the statutory basis for the grant of attorney's fees in actions to enforce liens:

*In actions to enforce a mortgage, deed of trust, or other lien or charge,* a personal judgment or judgment or judgments shall be rendered for the amount or amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for sale of the property charged and the application of the proceeds; or such application may be reserved for the future order of the court, *and the court shall tax the costs, attorney's fees and expenses which may accrue in the action....* (Emphasis added.)

Title 42 O.S.1981 § 176, additionally provides:

*In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee,* to be fixed by the court, which shall be taxed as costs in the action. (Emphasis added.)

The case is accordingly one for which attorney fees are specifically authorized by statute, and the trial court erred in refusing to entertain the plaintiff's application. Although the defendant contends that the plaintiff lost her lien when she agreed to permit him to deposit in escrow the sum of $10,000 from the sale of the property, his argument neglects that plaintiff in her amended petition claimed "a lien and special interest in the $10,000.00 being held in escrow ... the same being proceeds from

the sale of the above described real property and being placed in escrow by agreement of the parties pending the outcome of this action." Under these circumstances, we find defendant's argument to be incredible and patently frivolous. His contention that the plaintiff's right to attorney fees was barred when she recovered less than the amount of the lien originally claimed by her is similarly without merit. The plaintiff's amended petition sought the recovery of the exact amount of money which the jury subsequently awarded to her on her first cause of action. The judgment of the trial court is reversed and the case is remanded with instructions to conduct an evidentiary hearing for the assessment of a reasonable attorney fee on plaintiff's first cause of action, to include a reasonable attorney fee for defense of that part of this appeal dealing with plaintiff's first cause of action, and for prosecution of her appeal regarding attorney fees.

Accordingly, the judgment entered for plaintiff on her first cause of action is affirmed. The court's order denying plaintiff's application for attorney fees is reversed, and the matter is remanded to the trial court for an evidentiary hearing on the award of attorney fees as set forth above. Likewise, the judgment entered for plaintiff on her second cause of action is reversed and remanded for a new trial, and the trial court is directed to instruct the jury in keeping with this opinion.

DeMIER, J., concurs.

BRIGHTMIRE, P.J., concurs in result.

BRIGHTMIRE, Presiding Judge, concurring in result.

I agree that plaintiff's judgment on defendant's counterclaim should be affirmed. I also agree the trial court erred in failing to submit the issue of punitive damages to the jury. And I agree that plaintiff was entitled to recover her attorney fees.

The main thing I want to stress is that I see no fact issue concerning whether the admitted conduct of defendant is extreme and outrageous. Following the language quoted from *Munley* in the principal opinion is this:

"The [trial] court, in the first instance, must determine whether the defendant's conduct *may* reasonably be regarded *so extreme and outrageous* (emphasis in original) as to permit recovery, *or whether it is necessarily so.*" (Emphasis added.)

The court goes on to point out that it is only where the facts are such that reasonable persons could differ that a factual conflict is to be resolved by a jury.

Here I think when defendant admits he confronted plaintiff with some nude pictures he had of her and a tape recording he had secretly made during one of their passion-wrought lovemaking encounters and extorted the lien release from her through threats of publishing these private and personal secrets, he admits not only the commission of an extreme, outrageous and wrongful act, but indeed in my opinion of a felonious criminal act of extortion and blackmail under 21 O.S.1981 §§ 1481, 1482, 1485, and 1488.[2]

I would therefore vacate the judgment rendered on plaintiff's petition and remand the case with instructions to submit to the jury the issues of how much compensatory and how much punitive damages plaintiff is entitled to on her second cause of action. When these issues have been resolved, the court should grant plaintiff a judgment for the $5,505 the jury has heretofore found she is entitled to on her first cause of action and for the amount it finds she is entitled to on her second cause plus a reasonable attorney fee, appropriate interest and her costs.

---

**2.** Because the case must be partially reversed due to the error in striking plaintiff's request for punitive damages and because of our view of the facts, it is unnecessary to determine whether the supreme court's approval of OUJI–CIV No. 19.1 conflicts with or supersedes the earlier holding in *Munley v. ISC Financial House, Inc.,* 584 P.2d 1336 (Okl.1978).